JOSEPH B. PEAKS *vs.* WILLIAM D. BLETHEN and another.

Piscataquis.     Opinion November 16, 1885.

*Real action.     Pleadings.     Lease.     Owners of a second story of a building.*

Where the defendants in a real action plead *nul disseizin* and under a brief statement disclaim a portion of the demanded premises, and the plaintiff by counter brief statement alleges that the defendants before and since the commencement of the action were in possession of the premises and claimed a right, title and interest in them, the issue is, in whom is the better title to the portion not disclaimed, and did the defendants at the date of the writ claim title to or occupy the portion disclaimed.

Certain persons were permitted to build a public hall as a second story of a new school-house, and an agent, authorized by the district, leased that second story to the builders of it, with necessary easements of ingress and egress, and with equitable provisions as to the use, repair of the building, etc. " so long as the building shall stand." The building in its several parts were occupied in accordance with the agreement for nearly thirty years, when the district voted " to sell the school-house and lot under " the hall, and by deed their agent conveyed all their interest in the lot and building thereon. In a real action by the grantee against the occupants of the hall, *Held :*

1. That the title to the hall was never in the district, it accrued to the builders before the execution of the instrument, called a lease, by virtue of their having built it under a license from the district, and the purpose of the paper was to regulate the use and manner of using the hall.

2. That these regulations applying to the use, were not conditions of a grant, for there was no grant, hence the remedy for a breach would not be a forfeiture.

3. That there could be no forfeiture without an entry, and the deed from the district conveyed no such right, nor had the district made any such entry.

4. That the vote to sell did not authorize a conveyance of the hall, and the deed could go no further than the authority.

5. That the defendants, having disclaimed all but the hall with its easements, and being in possession of that, have a color of title, and the plaintiff had failed to show a better one.

ON REPORT.

The case, pleadings and material facts, are stated in the opinion.

The following is the paper referred to in the opinion as called a lease :

" This indenture made this 20th day of December, A. D. 1852, between the inhabitants of School District No. one, (1,) in

Dover, in the county of Piscataquis, by James S. Wiley of said Dover, agent of said district, especially authorized for the purpose by a vote of the said inhabitants, at a meeting of said district, held at their school-house, on the 14th day of February, 1852, on the one part, and Thomas S. Pullen, Samuel Palmer and Abijah B. Chase, all of said Dover, on the other part, witnesseth, that whereas the inhabitants of said district No. 1, did, on the 16th day of February, A. D. 1852, by and through their building committee, by them appointed and authorized for the purpose, contract with and engage, by agreement in writing of that date, Judah M. Hackett of said Dover, joiner, to build a school-house for said district, according to a certain plan and specifications referred to in said agreement, and whereas the said Pullen, Palmer and Chase, did, on the said 16th day of February, 1852, agree with the said Hackett that he should erect and build for them, said Pullen, Palmer and Chase, a second story over and above the said school-house, to be erected as aforesaid, according to a plan and specifications agreed upon between the parties, the said inhabitants, in a meeting of said district, held on the 24th day of January, 1852, having permitted and licensed the said Pullen, Palmer and Chase so to do, with their associates and assigns, said upper story to be used and occupied by them exclusively and apart from said school-room as and for a public hall, and whereas the said school-house, together with said second story and the hall therein, having been built and finished according to said agreements. Now, in consideration of the agreements and conditions hereinafter named to be performed by the said Pullen, Palmer and Chase, their associates, executors, administrators or assigns, the said inhabitants by their agent aforesaid, do hereby demise, lease and let unto the said Pullen, Palmer and Chase, their associates, executors, administrators and assigns, the said upper story of said school-house, now finished into a hall, and ante-room, to be used and occupied as a public hall, together with such privileges and appurtenances as may be necessary and proper for the convenient occupation of said upper story for the purposes aforesaid, with the perfect right and privilege at all times of ingress, egress and regress to and from said hall, by and

through the northerly door in said building, leading to said school-room, through the northly entry, over the flight of stairs to said upper story or hall. To hold to them, the said Pullen, Palmer and Chase, their associates, executors, administrators or assigns, for the term of so many years as said building shall stand, or until the parties shall mutually agree to devote the same to some other purpose. And in consideration of the conditions and agreements to be performed by said inhabitants, the said Pullen, Palmer and Chase, their associates, executors, administrators or assigns, agree to contribute to the repair of said building as follows, to wit: To paint the said upper story or so much thereof as pertains to said hall and ante-rooms, so often as shall be necessary for the good repair of the same and to repair their own windows and stairs leading to said hall. The roof of said building and the gable ends and all other parts of the building to be kept in repair at the expense of said district, said hall not to be occupied for any kind of stores, warehouses, workshops, nor for any purposes except as and for a public hall, for religious, scientific and literary lectures and addresses, and for any purposes for which such halls are usually and generally occupied. And it is further agreed that in case the parties should conclude to break up and take down said building, each is to share in proportion to the value of the parts of the same respectively owned and occupied by each party in the proceeds of the same, unless the parties can agree upon some other mode of distribution. And should any disagreement arise between the parties as to the necessity of any repairs, after notice thereof from the one to the other, the question shall be referred to the selectmen of Dover for the time being, whose decision as to the necessity of such repairs is to be binding upon the parties and final. It is also agreed that neither part of said building is to be occupied for any other purposes than those for which they are devoted, without the consent of the party adversely interested, in writing first had and obtained. "

Duly executed, acknowledged and recorded.

*C. A. Everett*, for the plaintiff.

In 1852, the district voted in substance that Mr. Wiley be an

agent to execute a good and sufficient lease to Pullen and others to add a second story to the school-house about to be erected and hold the same, and whether the second story was lawfully built or not, it was built and it then became real estate, nothing else, and was the property of the owner of the soil, the school district. 4 Mass. 576; 2 N. H. 12; 8 Mass. 417. It is entirely different from what it would have been if the builders had, by consent of the district, erected an entire building on the face of the earth on land of the district.

The district recognized the rights of Pullen and others under the lease. This plaintiff recognized the lease. The paper itself, after reciting the doings up to that time, says the district " doth demise, lease and let" the second story. " Demise " and " lease " mean " the letting of lands, rents, common or any hereditament, unto another, for a lesser time than he that doth let it hath in it. " Shepherd's Touchstone, c. 7, Lib. 1, notes; Taylor's Landlord and Tenant, § 14, n. 2. The words " demise, lease and let, " are apt and appropriate to convey a fee, if the words " to hold to his heirs, " &c., had been in the habendum. *Jamaica Pond A. Co.* v. *Chandler*, 9 Allen, 159. In this lease what estate was conveyed? There is nothing which indicates any number of years, or any event by which time may be reckoned, or which must happen in the life of either of the lessees. Therefore it is not a lease for years. Shep. Touch. 267, 272; 1 Cooley's Blackstone, book 2, 139, 142. The interest of a lessee at his death goes to his executor or adminis- trator. *Hollenbeck* v. *McDonald*, 112 Mass. 247; 5 Mass. 419.

Not being a lease for years, what is it? A lease for so many years as J. S. shall live is void. The word " heirs " not being in the lease, and the time being uncertain and undefined, it operates as a life-estate. *Hurd* v. *Cushing*, 7 Pick. 174; *Sedgwick* v. *Laflin*, 10 Allen, 430; *Buffum* v. *Hutchinson*, 1 Allen, 60; *Gould* v. *Lamb*, 11 Met. 84; *Farrar* v. *Cooper*, 34 Maine, 394.

The vote of the district to sell the house and lot under Odd Fellows' hall, was not restrictive as to the property to be sold.

The words used were simply descriptive. And the vote meant to sell all the property the district had in the land and building. At all events, the defendants can not complain. They are trespassers, whether the district or Peaks is the owner of the property. *Goodenow* v. *Kilby*, 24 Maine, 425; *Clark* v. *Pratt*, 47 Maine, 55; *Brown* v. *Pinkham*, 18 Pick. 174; *Williston* v. *Morse*, 10 Met. 24; *Morse* v. *Sleeper*, 58 Maine, 329. As the estate granted by this lease expired upon the death of Pullen, who was the last of the three lessees to die.

*E. Flint, A. G. Lebroke,* and *W. E. Parsons,* for the defendants, cited : *School Dist. in Dresden* v. *Ætna Ins. Co.* 54 Maine, 509; *Abbott* v. *Abbott*, 51 Maine, 584; *Ricker* v. *Hibbard,* 73 Maine, 107 ; *Barker* v. *Salmon*, 2 Met. 32 ; *Brown* v. *King,* 5 Met. 173 ; *Ashley* v. *Ashley*, 4 Gray, 197 ; *Bolivar M'f'g Co.* v. *Neponsit M'f'g Co.* 16 Pick. 241; 3 Wash. R. P. 120 ; *Tallman* v. *Snow*, 35 Maine, 342 ; *Jenks* v. *Walton*, 64 Maine, 97 ; *Hooper* v. *Cummings*, 45 Maine, 359 ; 104 Mass. 7 : *Trask* v. *Wheeler*, 7 Allen, 109 ; *Nash* v. *Bean*, 74 Maine, 340 ; *Adams* v. *Cuddy*, 13 Pick. 460 ; *Coe* v. *Persons Unknown*, 43 Maine, 432 ; *Walker* v. *Lincoln*, 45 Maine, 67 ; *Putnam Free School* v. *Fisher*, 38 Maine, 326 ; *Peters* v. *Foss*, 5 Maine, 184 ; *Savage* v. *Holyoke*, 59 Maine, 345 ; *Estes* v. *Cook*, 22 Pickering, 296 ; *Gibson* v. *Savings Bank*, 69 Maine, 579 ; *Chaplin* v. *Barker*, 53 Maine, 275 ; *Jewett* v. *Hussey*, 70 Maine, 433 ; *Sumner* v. *Stevens*, 6 Metcalf, 337 ; *Clapp* v. *Bromagham*, 9 Cowan, 530 ; *Webster* v. *Holland*, 58 Maine, 168 ; *Pejepscot Proprietors* v. *Nichols*, 10 Maine, 261; *Moore* v. *Knowles*, 65 Maine, 493 ; *Granite State Bank* v. *Otis*, 53 Maine, 133 ; *Clark* v. *Foxcroft*, 6 Maine, 296 ; *Osgood* v. *Howard*, 6 Maine, 452 ; *Aldrich* v. *Parsons*, 6 New Hampshire, 555 ; *Doty* v. *Gorham*, 5 Pick. 487 ; *Ashmun* v. *Williams*, 8 Pick. 402 ; *Tobey* v. *Webster*, 3 Johns. 461 ; *Fuller* v. *Tabor*, 39 Maine, 519 ; 1 Wash. R. P. 2, 9, 399, 403 ; *H. & E. Iron Co.* v. *Black*, 70 Maine, 479 ; *Lapham* v. *Norton*, 71 Maine, 83 ; *Sanborn* v. *Hoyt*, 24 Maine, 118 ; *Morse* v. *Copeland*, 2 Gray, 305 ; *Howard* v. *Wadsworth*, 3 Maine, 471 ; *Boston Water P. Co.* v. *B. & W. Railroad*, 16 Pick. 512 ; *Harback*

v. *Boston*, 10 Cush. 297; *Morgan* v. *Moore*, 3 Gray, 322; *Hancock* v. *Wentworth*, 5 Met. 446; Wash. Easements, 8; *Kingman* v. *Kingman*, 121 Mass. 251; *Dore* v. *Wood*, 2 B. & A. 724; *Jameson* v. *Milleman*, 3 Duer, 355; *Barnes* v. *Barnes*, 6 Vt. 388; *Proprietors Locks & Canals* v. *N. & L. Railroad Company*, 104 Massachusetts, 9; *Ayer* v. *Phillips*, 69 Maine, 52; *Richardson* v. *Wheatland*, 7 Metcalf, 169; *Daggett* v. *Slack*, 8 Met. 450; *Mace* v. *Cushman*, 45 Maine. 260; *Morton* v. *Barrett*, 22 Maine, 257; *Sweet* v. *Dutton*, 109 Mass. 592; *Tillinghast* v. *Cook*, 9 Met. 143; *Houghton* v. *Kendall*, 7 Allen, 75; *Haley* v. *Boston*, 108 Mass. 576; *Childs* v. *Russell*, 11 Met. 16.

DANFORTH, J. This is a real action and comes to the law court with the stipulation that judgment shall be rendered " upon the facts and so much of the testimony as is legally admissible. " No question is raised as to the competency of any of the testimony, no suggestion of any fact in dispute.

The defence is the general issue with a brief statement under which the defendants claim certain rights in the premises which are specifically described, and disclaim the residue. No objection is made as to the time when this disclaimer was filed. To it the plaintiff files a counter brief statement, alleging in substance, that at the date of the writ, and before and since, the defendants did claim right, title and interest in said premises, and were in the possession and occupation of the same, Thus is raised the real issue between the parties, and that is the title to the property described in the defendants' brief statement, and whether the defendants were in possession of, or claiming title to that part disclaimed.

It may be that the brief statement on either side is not technically accurate. But if, under the stipulations in the report, any pleadings are required, these are sufficient to direct the attention of the court to the real issue, and lay the foundation in the record for the proper judgment.

The case shows that in February, 1852, school district number one, in Dover, acquired an undoubted title to the lot of land

described in the plaintiff's writ and subsequently built a school-house thereon. The defendants disclaim any title to this lot and the building except the second story, which was finished as a hall and ante-rooms, with certain privileges or appurtenances connected with it. To this second story consisting of the hall and ante-rooms they, in substance allege a title and the remainder of the brief statement sets out certain easements which are in fact privileges or appurtenances connected with and belonging to the hall.

At a meeting holden in January, 1852, the district voted to build a school-house and purchase a lot for the same. At an adjournment of the same meeting, with the subject matter of building a school-house still under consideration, it was " voted that the building committee be authorized to permit any person, or persons, desiring to do so, to put into said school-house a second story to be used by them as a public hall, provided that such person or persons shall pay the extra expense of the same, the expense to be ascertained by said committee in contracting for the erection and completion of said house."

At a subsequent meeting in February, 1852, under an article in the warrant as follows, viz. ; " To see if the district will vote to authorize some person, or persons, to execute a sufficient lease of the upper story of the contemplated school-house, to the *proprietors* of the same," it was " voted that James S. Wiley be a committee in behalf of the district to execute a good and sufficient lease to Thomas S. Pullen and others to add a second story to the school-house about to be erected in this district, with a right to finish said second story into a hall and *to hold the same as proprietors thereof* so long as said school-house shall stand, and that said committee be instructed to insert in said lease such provisions as he shall deem equitable in regard to keeping said building in repair, its occupancy," &c.

In pursuance of this vote and after the school-house with the hall was finished, Mr. Wiley in behalf of the district entered into a written contract with Thomas S. Pullen, Samuel Palmer and A. B. Chase, dated December 20, 1852. By this instrument it appears that Pullen, Palmer and Chase, under the permission

given in the vote of the district had built the hall at their own expense for their own use. In it they are recognized as the owners, they, their associates, executors, administrators and assigns, are given permission to use it when it was built so long as the house shall stand, and when that is taken down provision is made for the division of the material in proportion to the value of the parts of the same "owned and occupied by each party." It further gives the rights of ingress and egress as appurtenances to the hall and provides for the uses to which it may be put.

Much stress is laid upon this instrument by the plaintiff as confirmatory, if not the foundation, of his title, claiming that it is a lease and that as it is not for a certain number of years, no definite period for its termination being fixed, it cannot be a lease for years, and as there are no words of inheritance it can only be a lease for the life of the three persons for whose benefit it was made, and as they are all dead the lease itself has ceased to be. It is true that it was called a lease, and that the words, "demise, lease and let," are used. But it is equally true that other words are used and that whatever it may be called, it is to be construed like other written instruments as a whole, taking into consideration all its parts, as well as the circumstances under which it was made and the purposes to be accomplised. *Jamaica Pond Aq. Co.* v. *Chandler*, 9 Allen, 159–167. A very important fact in this connection is, that the title to this hall was never in the district. It accrued to Pullen, Palmer and Chase before the execution of the instrument called a lease, by virtue of their having built it under a license from the district. This fact is recognized in the instrument itself, and it cannot therefore be a violation of its terms to set up a title in accordance with what is so distinctly recognized in it. We can hardly presume that the parties intended to make any change of ownership by a lease of a piece of property to the owners of it, but in a case like this, when that property was to be so connected with other property that its use to some extent would involve the use of the latter, it is but natural and proper that a contract should be made between the different owners regulating that use. In this case

it is evident that the use of the hall might be of some benefit to the district and to the school. It could be of no injury if used for proper purposes and at proper times. It is also evident that parties would not be willing to put their money into the hall without the assurance of the necessary easements to enable them to enjoy its use and for such a time as would make it profitable. Hence the use of the words " demise, lease and let" are fully justified by the easements conveyed and all the other provisions may have their full force consistently with the construction put upon the instrument by the parties, that the title to the hall was in the lessees and the purpose of the paper was to regulate the use and give the easements. A construction very largely for the benefit of the district.

In this view the fact that there are no words of inheritance in the contract is of no importance, for it contains no grant of the hall whether it is real or personal property, and the grant of the easements is only incidental to the hall and would probably have gone with it without the lease, with the exception perhaps of the length of time it was to be occupied and that could only be terminated if at all by notice, which has never been given.

In accordance with this construction of the lease, have been the acts of the parties since, showing that they so understood it. For about thirty years the district occupied its part of the premises recognizing the right of the other party and at the end of that time in its sale to the plaintiff still recognized it. The vote of the district under which the conveyance was made was as follows : " Chose C. H. B. Woodbury, agent to sell the school-house and lot under Odd Fellows' hall and convey the same." Thus authorizing the sale only of the premises less the hall, the easements, as privileges and appurtenances, going with the hall. On the other hand the builders of the hall with their successors and assigns have remained in unmolested possession of it for the same length of time.

This possession is not only confirmatory of the construction now given the contract, but is confirmatory of, and would be sufficient in itself, to establish a title in the defendants. This is not a possession of the hall by virtue of a license from and

under the district, but under a claim of title, which claim is recognized by the district, The possession is not hostile for the district sets up no claim in opposition to it; both parties, in fact, claim and concede the title to be in the possessor, which is equally efficient in establishing it, as when there are opposite and conflicting claims.

The sale has another and an important bearing upon the result in this case. As already seen the agent by the vote of the district was authorized to sell only the "lot and school-house under Odd Fellows' hall." The school-house and hall were begun and recognized all the way through, including this vote, as two separate and distinct pieces of property, though physically joined together. The meaning of the vote cannot therefore be misunderstood. It did not authorize a conveyance of the hall. The deed could go no farther than the authority and though a release of all the interest which the district had in the premises, it would convey no title to the hall; more especially as the district never had or claimed any such title.

It is however, contended that the hall was forfeited by a breach of the conditions under which it was occupied. But these were conditions, or manner of occupation only and not of grant, and to whom would the hall go if forfeited? Not to the district because it was not conveyed by the district. Besides it could not be forfeited without an entry; and none has been made and since the conveyance none can be made. *Hooper* v. *Cummings*, 45 Maine, 366.

The plaintiff in further maintenance of his title introduces a deed from Emma P. Dennett, one of the heirs of Thomas S. Pullen, dated December 20, 1882, duly recorded. But the defendants have a prior deed from the same person though unrecorded. The later deed is a mere naked release and as the grantor had already parted with all her interest, it had no effect whatever even as against an unrecorded deed, even if the hall had been real estate. *Nash* v. *Bean*, 74 Maine, 340; *Adams* v. *Cuddy*, 13 Pick. 463; *Jamaica Pond Cor.* v. *Chandler*, 9 Allen, 169.

It therefore clearly appears that the plaintiff has no title to

that portion of the premises described in the defendant's brief statement. The case shows quite as clearly that at the date of the plaintiff's writ, or before, or afterwards, the defendants were not in possession of, and made no claim to any part of that to which a disclaimer has been filed. The only evidence to prove the fact of a claim of title is the record copy of the deed from Jonathan A. Smith to these defendants dated December 20, 1882, which describes a portion of these premises. Smith long before this time had parted with all his interest in the lot, which through direct or mesne conveyances, came to the district. There is no proof that this deed was ever delivered, or that possession was taken or claim made under it, but the contrary.

Some objections are made to the title of the defendants under Pullen, Palmer and Chase. But we have no occasion to examine them for they have at least a color of title which is sufficient until the plaintiff shows a better one which he has failed to do.

*Judgment for defendants.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.