## UNITED STATES v. CALIFORNIA & O. LAND Co.

*(Circuit Court of Appeals, Ninth Circuit. March 10, 1892.)*

LAND GRANTS—CANCELLATION—FRAUD—BONA FIDE PURCHASERS.

In a suit by the United States to forfeit certain lands granted in aid of a military road, defendant claimed to be a *bona fide* purchaser under a deed which declared that the road company "does hereby alien, release, grant, bargain, sell, and convey" to the grantee, "his heirs and assigns, the undivided one-half of all the right, title, and interest" of the grantor "in and to all the lands lying and being in the state of Oregon, granted or intended to be granted to the state of Oregon by the act of congress approved July 2, 1864, * * * and granted by the state of Oregon" to the grantor by Act Or. Oct. 24, 1864; "and the undivided one-half of the right, title, and interest" of the grantor "to said grant of land under the several acts aforesaid, whether listed and approved or otherwise; also the undivided one-half of all future right, title, interest, claim, property, and demand" which the grantor "may at any time hereafter acquire to any lands by virtue of any further compliance with the requirements of said acts of congress, together with the hereditaments and appurtenances; * * * to have and to hold the lands hereby granted unto" the grantee, "his heirs and assigns forever." *Held,* that this deed shows an intent to grant the lands themselves, and not merely any interest which the grantor may

have therein; and hence that it is not a mere quitclaim, such as deprives the grantee of the right to rely upon the plea of an innocent purchase for value. HANFORD, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Oregon.

Suit under Act Cong. March 2, 1889, to forfeit certain lands granted to the state of Oregon by Act Cong. July 2, 1864, to aid in the construction of a military road, and by the state to the Oregon Central Military Road Company by the act of October 24, 1864.

### STATEMENT BY HANFORD, DISTRICT JUDGE, (DISSENTING.)

This cause has been heard twice by the United States circuit court for the district of Oregon, and once by the supreme court of the United States. The opinions of the circuit court on the first hearing and of the supreme court, each containing a full statement of the facts and circumstances from which the case has arisen, have been published, and reference thereto is made for the purposes of this opinion, in lieu of a more extensive and detailed statement. See *U. S.* v. *Road Co.*, 41 Fed. Rep. 493; *U. S.* v. *Road Co.*, Id. 501; *U. S.* v. *Road Co.*, and kindred cases, 140 U. S. 599, 11 Sup. Ct. Rep. 988. After being remanded to the circuit court, the case went to trial upon issues joined by a replication to the pleas and answer of the defendant, the California & Oregon Land Company, denying the allegations of the said defendant that the several promoters and organizers of said company were *bona fide* purchasers of the land in controversy, for the full value thereof, without notice or reason to believe or suspect that there had been any fraudulent act committed or misrepresentation made affecting the title of their vendors, or that the wagon road, in aid of which the lands were granted, had not been wholly, seasonably, and properly completed in accordance with the requirements of the granting acts. The pleadings admit, but only by implication, that the wagon road was never constructed, and that the certificates given by the governor of Oregon were untrue. The only issue of fact in the case is made by the second plea, which is a negative plea, raising simply a question whether the defendant is entitled to the protection which a court of equity gives to *bona fide* purchasers of the legal title to real estate. The circuit court so construed the pleadings, and held the parties strictly within the limits of that issue in the introduction of evidence, and even made a ruling excluding all evidence offered on the part of the government to prove that the wagon road had never been constructed. Upon the final hearing the following decree was rendered by the circuit court:

"This cause was heard upon the bill, the amended pleas, and answer of the defendant, the California and Oregon Land Company, the replication thereto, the testimony and exhibits, and was argued by Mr. Franklin P. Mays, United States attorney, and Mr. Albert H. Tanner, of counsel, for the plaintiff, and Mr. Rufus Mallory, for said defendant; on consideration whereof the court finds that the certificates of the governor of Oregon, declaring the road mentioned in the bill to have been duly constructed, were truthfully made, without fraud or misrepresentation on the part of any one; and that said defend-

ant, the California and Oregon Land Company, is the purchaser of the land described in said bill from the Oregon Central Military Road Company, in good faith, for a valuable consideration, and without notice of any fraud or misrepresentation on the part of said Oregon Central Military Road Company or any one else. It is therefore ordered, adjudged, and decreed that the said plea of said defendant be, and the same is hereby, sustained, and that said bill of complaint be, and the same is hereby, dismissed, as to said defendant, the California and Oregon Land Company."

*Franklin P. Mays,* U. S. Atty., and *Albert H. Tanner,* Sp. Asst. U. S. Atty.

*Rufus Mallory* and *W. C. Belcher,* for appellee.

Before HANFORD, HAWLEY, and MORROW, District Judges.

### OPINION OF THE COURT.

HAWLEY, District Judge. I am of opinion that the circuit court did not err in finding that defendant was the purchaser of the land in question in good faith, and for a valuable consideration, without notice of any fraud on the part of the Oregon Central Military Road Company or any one else. This finding is, in my opinion, fully sustained by the evidence, and the court was therefore justified in sustaining the defendant's objection to the testimony offered by complainant, after the defendant had rested its case, to show that said road had never been built, and that the certificates of the governor of Oregon that it was built were obtained by misrepresentation and fraud. In *Iron Co.* v. *U. S.,* 123 U. S. 313, 8 Sup. Ct. Rep. 131, the court said:

"It is fully established by the evidence that there were in fact no actual settlements and improvements on any of the lands, as falsely set out in the affidavits in support of the pre-emption claims and in the certificates issued thereon. This undoubtedly constituted a fraud upon the United States, sufficient in equity, as against the parties perpetrating it, or those claiming under them with notice of it, to justify the cancellation of the patents issued to them. But it is not such a fraud as prevents the passing of the legal title by the patents. It follows that, to a bill in equity to cancel the patents upon these grounds alone, the defense of a *bona fide* purchaser for value without notice is perfect."

Applying the principles therein announced to the facts presented by the record in this case, it necessarily follows that the question whether the road was actually built or not was wholly immaterial, unless it was shown that defendant was a purchaser with notice. Independent of the general principles of law that are always applied by courts where the plea of a *bona fide* purchaser for value is presented, the act of congress authorizing this and other suits to be brought to forfeit the lands hitherto granted expressly preserved the rights of such purchasers in the following language:

"Saving and preserving the rights of all *bona fide* purchasers of either of said grants, or any portion of said grants, for a valuable consideration, if any such there be. Said suit or suits shall be tried and adjudicated in like manner, and by the same principles and rules of jurisprudence, as other suits in equity are therein tried." 25 St. at Large, 851.

Without discussing the evidence, it is perfectly clear to my mind that defendant was a *bona fide* purchaser for value without notice. This must be admitted, unless it be that the deeds from the Oregon Central Military Road Company to Pengra were quitclaim deeds pure and simple, and that a purchaser under a quitclaim deed cannot claim to be a *bona fide* purchaser for value. A full investigation of that question would open up a wide field of inquiry in regard to which I deem it unnecessary to enter at any length. There are numerous and many conflicting authorities upon this subject, which I shall not attempt to review. It is sufficient to say that, in my opinion, the weight of reason and authorities is made to depend upon the real character of the deed, as to whether or not it purports to convey, or does in fact convey, simply the speculative right, title, and interest of the party, or whether or not it purports to convey, and does in fact convey, the lands mentioned. If the deed is a quitclaim in the strict sense of that species of conveyance, then it will not support the defense of an innocent purchaser. "Whether the conveyance be a quitclaim or not is dependent upon the intent of the parties to it, as that intent appears from the language of the instrument itself. If the deed purports and is intended to convey only the right, title, and interest in the land, as distinguished from the land itself, it comes within the strict sense of a quitclaim deed, and will not sustain the defense of innocent purchaser. If it appears that it was the intention to convey the land itself, then it is not such quitclaim deed, although it may possess characteristics peculiar to such deeds. The use of the word 'quitclaim' does not restrict the conveyance if other language employed in the instrument indicates the intention to convey the land itself." *Garrett* v. *Christopher*, 74 Tex. 453, 12 S. W. Rep. 67. The true character of the deed, and the real intent of the parties, is to be determined by the terms of the conveyance itself. This general idea is fully recognized by the decisions of the supreme court of the United States. In *Van Rensselaer* v. *Kearney*, 11 How. 322, the court, in speaking of the effect of a deed by way of release or quitclaim of the grantor's right, title, and interest, said:

"But this principle is applicable to a deed of bargain and sale by release or quitclaim in the strict and proper sense of that species of conveyance; and therefore, if the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title, in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted."

The language of the first deed, conveying an undivided one-half interest to Pengra, dated May 12, 1874, is as follows:

"The Oregon Central Military Road Company has aliened, released, granted, bargained, and sold, and does hereby alien, release, grant, bargain, sell, and convey, unto the said B. J. Pengra, the party of the second part, his heirs and assigns, the undivided one-half of all the right, title, and interest of

the said party of the first part in and to all the lands lying and being in the state of Oregon granted or intended to be granted to the state of Oregon by the act of congress approved July 2d, 1864, * * * and granted by the state of Oregon to the said Oregon Central Military Road Company by an act of the legislative assembly of said state of Oregon approved October 24th, 1864, * * * and the undivided one-half of the right, title, and interest of said party of the first part to said grant of land under the several acts aforesaid, whether listed and approved or otherwise; also the undivided one-half of all future right, title, interest, claim, property, and demand which the party of the first part may at any time hereafter acquire to any lands by virtue of any further compliance with the requirements of said acts of congress, together with the hereditaments and appurtenances. * * * To have and to hold the lands hereby granted unto the said party of the second part, his heirs and assigns forever."

From this language, as well as of all other conditions, reservations, and covenants in said deed expressed, it is clear to my mind that the parties intended by this instrument to convey, and did convey, the land itself, and that it is not such a quitclaim deed as deprives defendant of the right to rely upon the plea of an innocent purchaser for value. The second deed contains the same language as the first. The deeds from Pengra to Colby and others are regular bargain and sale deeds of the land in question. From a careful consideration of all the evidence in the record, and of the principles of law applicable thereto, I am of opinion that the decision and rulings of the circuit court were correct. I am authorized to say that Judge MORROW concurs with me in the views I have expressed. The judgment of the circuit court is therefore affirmed.

HANFORD, District Judge, (dissenting.) The supreme court reversed the first decree of the circuit court for error in refusing to allow a replication to the pleas, and remanded the cause for the express purpose of having a full investigation and determination of the facts in the light of all the testimony affecting the question of the bona fides of the transactions by and through which the defendant has, or claims to have, acquired title to the land. The important questions of law involved in the case, and which were fully discussed in the opinion of the circuit judge, are only referred to in the briefest manner by the supreme court. The supreme court could not, after making the careful and full statement of the case included in its opinion, have passed over these questions through mere inadvertence. Evidently, except in so far as it was intended to reverse the decision made by the circuit judge, the supreme court intentionally refrained from expressing an opinion upon the questions of law, until there could be a full presentation of the case, and a decision of all questions of law and fact, after the introduction of the evidence. The act of congress authorizing the suit expressly mentions as one of the subjects to be adjudicated the question as to the legal effect of the certificates of the governor of Oregon. The circuit judge decided that question, and in deciding it affirmed the validity of the defendant's title to the land; but the supreme court did not by any expression in its opinion approve or criticise the decision of that question. We can

hardly suppose that the court intended to dispose of the case finally by simply reversing the decision of the circuit court, without giving some expression of opinion upon this important question.    Therefore we may fairly infer that the question has been reserved for future consideration by that court.    The grounds of the supreme court's decision appear in the following extracts therefrom:

"We are of opinion that the circuit court erred in not permitting the plaintiffs to reply to the pleas, and in dismissing the bill absolutely.  *   *   * The decree must be reversed in so far as it dismisses the bill, and the case be remanded to the circuit court, with a direction to allow the plaintiff to reply to and join issue on the pleas.  *   *   *  It is manifest that, although the act says that the suits are to be tried and adjudicated in like manner and by the same principles and rules of jurisprudence as other suits in equity, congress intended a full, legal investigation of the facts, and did not intend that the important interests involved should be determined upon the untested allegations of the defendants.  *   *   *   The government has had no opportunity to prove the charges of fraud made in the bill, and there is no proof but the allegations of the pleas as to the *bona fides* of the defendants, and as to the amounts expended by them in good faith in connection with the roads or the lands.  It cannot be properly held that, under the act of 1889, final adjudication can be made, on such pleadings alone, as to the extensive interests involved in this litigation."

In view of the course which the case has already taken, it seems to be unnecessary, if not improper, for this court at the present time to do more than decide whether, upon the evidence, the defense of a *bona fide* purchase has been made out, and whether the court erred in excluding evidence material for the government.   The latter inquiry, being of an incidental and preliminary character, will be first disposed of.   The facts as to the completion of the road, or failure to construct it, are important matters of evidence bearing directly upon the question at issue, —as to whether the defendant, at the time of the purchase of the land from the Oregon Central Military Road Company, had notice of the failure of that company to earn the grant by constructing the road.   The existence of such an important highway extending from the heart of the Willamette valley to the eastern boundary of the state, if it does exist, must necessarily be a matter of such general notoriety as to be presumably within the knowledge of all business men having the means and disposition to purchase on speculation the lands granted for the purpose of aiding in its construction, and located adjacent thereto; and the non-existence of such highway, if in fact it never was constructed, is such an extraordinary circumstance, when considered in connection with the transfer of the land grant to private individuals, that, without explanation, it is impossible to understand how the purchaser could have failed to have taken notice of it.   The reason given for the exclusion of the evidence bearing upon this point is that, by failing to deny them, the pleas and answer admit the averments of the bill as to the non-construction of the road, and the falsity of the government's certificates, and dispenses with the necessity of proof thereof, and that the taking of such proof would impose a grievous burden upon the parties by reason of the amount of it and the great expense and consumption of time nec-

essary for the purpose. The supreme court, however, has held that the case cannot properly be decided until the proofs shall have been taken; and, having remanded the cause for the express purpose of having an investigation of the facts, the trial court is left without discretion, and must proceed according to the mandate.

There is another reason for holding that the circuit court was in error in excluding the evidence offered by the government. It is this: The answer does not deny nor expressly admit the charges made in the bill that the lands were not earned according to the terms of the granting acts, and that the certificates are untrue, and that the same were obtained by false representations and fraud. The plea is a negative plea, and does controvert the averments of the bill, so that proof thereof is required to disprove the plea. Where the plaintiff has replied to a plea which constructively admits the averments of the bill, or the part of the bill to which it refers, he "may rest satisfied with that admission, and need . not go into evidence as to that part of his case which the plea is intended to cover, unless the plea is a negative plea; for in that case it will be necessary for him to prove the matter negatived, for the purpose of disproving the plea, in the same manner as he may enter into evidence for the purpose of disproving matter which has been pleaded affirmatively." 1 Daniel, Ch. Pl. & Pr. (5th Ed.) 837.

The answering defendant, in order to prove the allegations of the second plea, was obliged to and did introduce the deeds by which it claims to have acquired title to the land, and to show by other evidence the particulars of the transaction attending the negotiations for and consummation of the purchase from the Oregon Central Military Road Company, from which it is clear that the promoters and organizers of the defendant corporation first bargained with the Oregon Central Military Road Company for an undivided one-half of the lands granted for the price of $100,000, and the right to purchase the other half at a corresponding price; that, after examining an abstract of the title, and obtaining the advice of eminent lawyers as to the right of said company to sell the land, they paid $100,000, and thereupon said company, by its deed, granted and conveyed one-half of all the right, title, and interest of said company, and one-half of the right, title, and interest which it might thereafter acquire, in and to said lands, to one P. J. Pengra, who, on the next day after the recording of said deed, by his bargain and sale deed conveyed the lands to the persons who afterwards organized this defendant corporation; and some five months after the conveyance of said one-half interest the other half was conveyed in a similar manner,—that is to say, the corporation first made a deed of merely its right, title, and interest in and to the property to Pengra, and he, by a bargain and sale deed, conveyed the property to the purchasers. This evidence does not sustain the plea. The rule to be applied is this: In equity, a purchaser of real estate from the apparent owner thereof, who, after payment of the reasonable value of the property, receives a conveyance of the legal title, without knowledge of an equitable right to the property existing in another, or notice of facts which would cause an ordinarily prudent person to in-

quire into such existing equitable rights, or who, after making the inquiry, and the exercise of reasonable diligence, has failed to discover an existing defect in his grantor's title, is entitled to the same protection as the purchaser of personal property in market overt. The rule is founded upon the doctrine of estoppel, which does not allow an owner of property who has permitted a concealment of his claim or rights to thereafter assert them to the prejudice of an honest purchaser, unable, by reason of such concealment, to learn of the existence of such claim or rights in time to avoid imposition. As in all cases where rights depend upon the doctrine of estoppel, a defense of this sort requires the clearest proof of all the facts essential to create the estoppel, and equity does not permit a party to derive benefit from his own ignorance of facts which he could have learned by the exercise of ordinary prudence and diligence. This defense is not available to a person who, by the circumstances connected with his purchase, or the form of the conveyance which he accepts, is apprised that his grantor has not intended or is unable to convey a perfect title, without additional proof showing that the purchaser, after due diligence, failed to discover any valid, adverse claim to the property. One who contracts for and pays the price for a particular parcel of real estate, and obtains a deed which, by its terms, purports to convey the title to the property which it describes, occupies a position entirely different from that of the purchaser who is content to receive merely a conveyance of the right, title, and interest of his grantor in and to the property. By many of the adjudged cases he is held to be chargeable with constructive notice, inherent in the deed, of the actual right and title of his grantor, as contradistinguished from what may at the time appear to be, by his visible possession of the property, or muniments of title shown by the public record. *Blanchard* v. *Brooks*, 12 Pick. 47; *Springer* v. *Bartle*, 46 Iowa, 688; *Steele* v. *Bank*, 79 Iowa, 339, 44 N. W. Rep. 564; *Peters* v. *Cartier*, 80 Mich. 124, 45 N. W. Rep. 73; *Peaks* v. *Blethen*, 77 Me. 510, 1 Atl. Rep. 451; *Logan* v. *Neill*, 128 Pa. St. 457, 18 Atl. Rep. 343; *Hastings* v. *Nissen*, 31 Fed. Rep. 597; *Gest* v. *Packwood*, 34 Fed. Rep. 372; *Mortgage Co.* v. *Hutchinson*, (Or.) 24 Pac. Rep. 515; 3 Washb. Real Prop. (4th Ed.) marg. p. 607; 2 Pom. Eq. Jur. § 753; 1 Devlin, Deeds, § 674. This rule, in all its rigor, has been declared and applied by the supreme court of the United States repeatedly. In the case of *Oliver* v. *Piatt*, 3 How. 333, the question as to the right of the grantee of a right, title, and interest to property to claim protection in equity as a *bona fide* purchaser was elaborately argued by able counsel, and received careful consideration. The opinion of the court was written by Mr. Justice STORY, wherein he expressed the view of the court as follows:

"Another significant circumstance is that this very agreement contains a stipulation that Oliver should give a quitclaim deed only for the tracts; and the subsequent deeds given by Oliver to him accordingly were drawn up without any covenants of warranty, except against persons claiming under Oliver or his heirs or assigns. In legal effect, therefore, they did convey no more than Oliver's right, title, and interest in and to the property; and under such circumstances it is difficult to conceive how he can claim protection, as

a *bona fide* purchaser for a valuable consideration without notice, against any title paramount to that of Oliver, which attached itself as an unextinguished trust to the tracts."

"The general principle is admitted that a grantor conveying by deed of bargain and sale, by way of release or quitclaim, all his right and title to a tract of land, if made in good faith, without any fraudulent representation, is not responsible for the goodness of the title beyond the covenants in his deed. * * * A deed of this character purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seised or possessed at the time, and does not operate to pass or bind an interest not then in existence. The bargain between the parties proceeds upon this view, and the consideration is regulated in conformity with it." (Opinion of Mr. Justice NELSON in *Van Rensselær* v. *Kearney*, 11 How. 297.)

"The evidence satisfies us that Cook had full notice of the frauds of Powers and of the infirmities of Dessaint's title. Whether this was so or not, having acquired his title by a quitclaim deed, he cannot be regarded as a *bona fide* purchaser without notice. In such cases the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey." (Opinion by Mr. Justice SWAYNE in *May* v. *Le Claire,* 11 Wall. 217.)

The cases of *May* v. *Le Claire* and *Oliver* v. *Piatt* are cited to the same point, and the doctrine is reaffirmed, by the supreme court in *Villa* v. *Rodriguez*, 12 Wall. 323, and *Dickerson* v. *Colgrove*, 100 U. S. 584. The supreme court has steadfastly adhered to the rule denying the grantee in a quitclaim deed the right to defend as a *bona fide* purchaser against a title paramount to that which his grantor had at the time of executing the quitclaim deed. *Brown* v. *Jackson*, 3 Wheat. 449; *Hanrick* v. *Patrick*, 119 U. S. 175, 7 Sup. Ct. Rep. 147.

The authorities above cited are not unopposed. Some of the ablest text-writers and jurists of this country hold to the view that a grantor cannot by any form of deed do more than convey all his right, title, and interest; that a quitclaim will convey a perfect fee-simple title, just as effectually as a warranty deed, if in fact the grantor at the time of executing the deed has such a title; that a quitclaim deed no more implies that the grantor doubts the goodness of his title than a warranty deed implies that the grantee considers the title unsafe without the support of covenants and assurances involving personal liability for damages; and that a purchaser who relies upon the public records showing a clear title in the grantor, even though he takes a quitclaim deed, cannot be denied the character of a *bona fide* purchaser without robbing the recording acts of their virtue. Between these two extremes the true doctrine is to be found, and the trend of opinion in this country, as may be gathered from the most recent decisions and the latest contributions from American law-writers, is in the direction of greater liberality, and to regard with favor the more reasonable rule by which the actual good faith of the purchaser is made the test of his right in equity; and the question of actual good faith is chiefly one of fact. So that there is no such thing as a conclusive presumption of *mala fides* from the mere acceptance of a quitclaim deed. A purchaser who makes diligent and candid inquiry with intent to ascertain the truth concerning his grantor's

title, and who, after such inquiry, pays a fair price for property in the honest belief that the title is perfect, ought to have protection against adverse rights which, notwithstanding his efforts to discover them, remained concealed from him, although he receives only a quitclaim deed; and if a purchaser does, upon inquiry, learn of the existence of adverse rights before consummating the purchase, he ought not to receive protection against such rights, even though his deed is in form an absolute grant of the property, with a general warranty, and full covenants for title. *Merrill* v. *Hutchinson*, (Kan.) 25 Pac. Rep. 215; 34 Cent. Law J. 174. This is the common sense of the matter, and the only just rule. Nevertheless it is a true and self-evident proposition that by a quitclaim deed the grantee is necessarily warned. By agreeing to accept that form of conveyance, he avowedly assumes all risk of a bad title as between himself and his grantor, and he may be fairly presumed to have made a timely and sufficient examination of the title. From this it follows that he may be conclusively presumed to have become informed of all facts which could have been discovered by an intelligent and earnest effort, and to have acted in the light of all such facts in making the purchase. Within this modification of the rule to which the supreme court seems to be committed, it is not sufficient for the defendants to show that by reason of their failure to inquire they were ignorant of the failure of their grantor to earn the land grant according to the terms of the act of congress. They must prove that they did inquire, and that, notwithstanding the exercise of ordinary prudence and diligence on their part, they were misinformed and deceived, and that they honestly believed that their grantor had acquired a full and complete title to the land by having constructed and completed the wagon road. This much, at least, is required of them to bring the case within any rule deducible from the cases cited in their behalf upon the argument; and for lack of such proof in the case as it is now before this court the evidence is insufficient to sustain their plea.

The appellee, however, claims protection under cover of the bargain and sale deeds from Pengra, the grantee in the quitclaim deeds from the Oregon Central Military Road Company. But Pengra did not at any time assume to deal with the property as the owner of it. He was a mere medium for the transfer of the title to the individuals to whom the corporation had contracted to convey it. Their negotiations for the purchase were not made with Pengra as the apparent owner, but were with the officers and agents of the corporation; and they were content to finally complete the purchase and receive a conveyance in the same manner as in acquiring the one-half interest in the first instance,—that is, by means of two deeds, some five months after their purchase of the one-half interest. No additional grounds for relief or protection are shown by the circumstance that two deeds were made to effect one transfer of the property. In this particular the case is analogous to the case of *Baker* v. *Humphrey*, 101 U. S. 494, wherein Mr. Justice SWAYNE, in the opinion of the court, says:

"Chapman conveyed by a deed of quitclaim to the attorney's brother. The attorney procured the deed to be so made. It was the same thing, in view of the law, as if it had been made to the attorney himself. Neither of them was in any sense a *bona fide* purchaser. No one taking a quitclaim deed can stand in that relation."

For the reasons above given, it is the writer's opinion that the decree of the circuit court ought to be reversed, and that the cause should be remanded for a new trial, with directions to admit evidence offered in behalf of either party as to the completion of the wagon road or failure to complete it, and as to any fraudulent acts or misrepresentation by means whereof the certificates of the governor of Oregon were wrongfully obtained.