UNITED STATES v. SIERRA NEVADA WOOD & LUMBER CO.  SAME v. HIGGINS et al.  SAME v. BOYINTON et al.  SAME v. KIELY et al.  SAME v. RICE.

Nos. 609-613.

(Circuit Court, D. Nevada.  April 5, 1897.)

CANCELLATION OF LAND PATENTS—FRAUD—BONA FIDE PURCHASERS.
    To a bill in equity by the United States to cancel a patent, upon the ground that it was obtained by fraud, the fact that the defendants are bona fide purchasers for value, without notice of the fraud, constitutes a complete defense.

These were bills in equity brought by the United States against the Sierra Nevada Wood & Lumber Company and others to cancel a patent for certain lands.

The facts stipulated, omitting the names of the defendants and the description of the lands in each suit, are as follows:

    "It is hereby stipulated and agreed by and between the United States of America, plaintiff, and * * *, defendants, through their respective attorneys, that the following statement is and shall be considered the facts at

issue in the above-entitled case, and the whole thereof, and that upon this statement of facts the same shall be presented to the above-entitled court for consideration, determination, and decree: That * * *' defendants, and each of them, are citizens of the district and state of Nevada, and are resident therein, and that the land and real property hereinafter more particularly described is situated within said district and state of Nevada. That one Charles Musso is a Sioux half-breed Indian, and on, to wit, July 17, 1854, was a resident and occupant of the Sioux half-breed Indian reservation, in the state of Minnesota. That under and by virtue of an act of congress approved July 17, 1854, the said and identical Charles Musso, Sioux half-breed Indian, as aforesaid, was entitled to have scrip, known as 'Sioux Half-Breed Indian Scrip,' to wit, for 480 acres of land, which said scrip was, by the terms thereof, locatable by the said Charles Musso upon any unoccupied lands subject to pre-emption and private sale, or upon any other unsurveyed lands not reserved by government, upon which he has made improvements; and, under and in pursuance of the provisions of said act, there was issued to the said Charles Musso, and in his name and for his use and benefit, five piece of said Sioux half-breed Indian scrip, to wit, number 301, A, B, C, D, and E, for 480 acres of land in the aggregate; and the said Charles Musso then and there became, and was, and ever since has been, the legal owner of said five pieces of scrip, number 301, A, B, C, D, and E, for said 480 acres of land in the aggregate. That said five pieces of scrip, number 301, A, B, C, D, and E, were never delivered to said Charles Musso, or to any one, with authority to act for him, or to receive or to have the same; and the said Charles Musso never did receive or have the same, or any part thereof, nor did he assign, transfer, or dispose of the same, or authorize any one to do so for him.

"That, after said scrip was issued, it was taken possession of by the special commissioner of the United States, appointed under the act of July 17, 1854, whose duty it was to secure a deed of relinquishment from the said Charles Musso, and to deliver to him, upon the execution of said deed, the said scrip. That the said Charles Musso was not found by the said commissioner, and did not apply for said scrip, but was at the time, about July 17, 1854, upon the said reservation in the state of Minnesota, and was not advised of the issuance of said scrip to him, or of his right to have the same, otherwise than by the said act of congress and the proceedings had thereunder, and did not execute to the said commissioner his deed of relinquishment; and the said commissioner did not deliver said or any part of said pieces of scrip before mentioned to the said Charles Musso, or to any one for him having authority to receive the same. On the contrary, the said commissioner returned said pieces of scrip to the Indian office. That afterwards, and on or about December 10, 1860, the said five pieces of scrip number 301, A, B, C, D, and E were sent to the superintendent of Indian affairs at St. Paul, Minnesota, with instructions to give public notice that the same were in his possession, and held by him for delivery. That the said superintendent of Indian affairs, at St. Paul, Minnesota, did give notice that he held said scrip for delivery. That one person, falsely pretending to be Charles Musso, a Sioux half-breed Indian, a resident of the state of Minnesota, represented himself to one W. S. Chapman as the genuine Charles Musso, and as being entitled to said pieces of scrip, and made claim to the same, and, so pretending, made, executed, and delivered in due form of law a power of attorney, creating and appointing one W. S. Chapman his attorney in fact to receive, receipt for, and have the said scrip. That afterwards, on or about January 1, 1864, the said superintendent of Indian affairs at St. Paul, Minnesota, reported said scrip as delivered; and the same was delivered to said W. S. Chapman, who claimed then to be the attorney in fact of said Charles Musso, and who then presented to the said superintendent of Indian affairs a paper in writing, purporting to be the power of attorney, and purporting to be executed by said Charles Musso, on, to wit, January 9, 1863, in the county of Hennepin, Minnesota. That the said W. S. Chapman presented said paper, purporting to be a power of attorney, claiming to be acting as the attorney in fact for the said Charles Musso; and the said W. S. Chapman, under and by virtue of the said paper, purporting to be a power of at-

torney of the said Charles Musso, executed a pretended relinquishment of said Charles Musso's interest in the said Indian reservation to the United States of America, and under and by virtue of said paper, purporting to be a power of attorney of said Charles Musso, demanded and received the said pieces of scrip, number 301, A, B, C, D, and E. That W. S. Chapman was not the attorney in fact for said Charles Musso, nor had he any authority to act for or bind the said Charles Musso of and concerning the said five pieces of scrip, or any thereof; on the contrary, that said paper, purporting to be the power of attorney of said Charles Musso, and purporting to nominate and appoint the said W. S. Chapman as the attorney in fact of and for said Charles Musso, was not the power of attorney of said Charles Musso, and was not executed by him, but was in fact the said other person falsely pretending to be Charles Musso, who was in no manner entitled to said scrip, nor was he interested therein. That the said Charles Musso never having made or executed the same, and never having authorized the same to be made or executed in his name, or for any purpose whatsoever. That the said Charles Musso had no knowledge of the existence of said false, fraudulent, and pretended power of attorney, and was in no wise a party to the same. That afterwards, and on or about the 1st of March, 1864, the said W. S. Chapman, as the pretended agent and attorney in fact of the said Charles Musso, and claiming to act as the attorney in fact for said Charles Musso, and without the knowledge, authorization, or consent of the said Charles Musso, located one of the said pieces of scrip, to wit, number 301, * * * at the United States land office at Carson City, Nevada, upon lands in the said district of Nevada, to wit, * * *; and afterwards, and on the 15th day of September, 1864, upon the aforesaid location, and without the knowledge, authorization, or consent of the said Charles Musso, a United States patent was issued upon said piece of scrip for said above-described lands, in the name of said Charles Musso, which said patent was afterwards, and on the 15th day of September, 1864, delivered, upon said Chapman's demand, to said W. S. Chapman, claiming to be the agent and attorney in fact of said Charles Musso, and upon his receipt as such attorney in fact. That each and every of said acts were without the knowledge, authorization, or consent of said Charles Musso, and were false, fraudulent, and void as to said Charles Musso, and as to plaintiff, the United States of America.

"That as to plaintiff, the United States of America, the said paper, purporting to be the power of attorney of said Charles Musso, and the said deed of relinquishment made, executed, and delivered by the said W. S. Chapman under the pretended authority of said pretended power of attorney, and the said delivery of the said pieces of Sioux half-breed Indian scrip to the said W. S. Chapman, and the location of the same by the said W. S. Chapman, under said false and pretended power of attorney, and the issuance and delivery of said patent, were, and each and every of said acts were and are, fraudulent and void. That the said defendants * * * are in the possession, use, and occupancy of the aforesaid and above-described land, claiming under the patent of the United States granted and issued upon and in satisfaction of said piece of scrip, and deraign their title from the United States, under and in virtue of said patent, and have no other claim or title to the said land. That at the time the said pretended power of attorney to the said W. S. Chapman, purporting to make the said W. S. Chapman the attorney in fact of said Charles Musso, and at the time said deed of relinquishment was made by the said W. S. Chapman, pretending to be the attorney in fact of the said Charles Musso, under said false and fraudulent power of attorney, and at the time said scrip was located as aforesaid, and a patent to the said land was issued and delivered as aforesaid, said Charles Musso was absent from the state of Minnesota, and from the state of Nevada, and had no knowledge of said acts or either of them; and that the said Charles Musso left the state of Minnesota in June, 1855, and did not return to said state until the year 1885, and when informed touching his rights in the premises, and of and concerning the said pieces of scrip, and the said pretended power of attorney, and the delivery of said scrip to the said W. S. Chapman, under the said pretended power of attorney, and of the location of the scrip, the said Charles Musso did, on, to wit, the —— day of

April, 1892, make, execute, and tender to the United States, and to the proper officers of the United States, a formal deed of relinquishment of his interest in said Sioux Indian reservation, and did then demand of the United States, and of the proper officers thereof, the issuance and delivery to him of certificates of Sioux half-breed Indian scrip, under the provisions of the aforesaid act of July 17, 1854, for 480 acres of land, in exchange for and in satisfaction of his interest as a Sioux half-breed Indian in said Sioux Indian reservation, in the said state of Minnesota. That not until on or about the said day of April, 1892, did said Charles Musso or plaintiff have knowledge that said power of attorney was false and fraudulent. That after said patent was issued by the United States, and after the same was delivered and recorded to the said W. S. Chapman, alleged attorney in fact as aforesaid, and long prior to the commencement of this suit, said defendants, * * * and each of them, or their grantors, became and were bona fide purchasers of a portion of said land described in said patent, and paid a valuable consideration in money therefor, and afterwards entered into and took possession of the same, and made valuable and expensive improvements thereon; and ever since then, and for more than twenty-five years, defendants and their grantors have been in the actual and exclusive possession and use of the said lands, and are now in such possession and use. That defendants had no knowledge nor information, nor had their grantors any knowledge or information, nor had they or their grantors any means of acquiring any knowledge or information, of the alleged wrongful or fraudulent acts heretofore set forth; nor did they, or either of them, know, or have reason to know, that said power of attorney was false or fraudulent, or was not the power of attorney of said Charles Musso named in the complaint. That neither the defendants nor their grantors in any manner participated in said alleged unlawful or wrongful acts, or any of them."

Charles A. Jones, U. S. Atty.

T. V. Julien and Robert M. Clarke, for defendants.

HAWLEY, District Judge. These are bills in equity to cancel a patent issued September 15, 1864, by the United States to W. S. Chapman, as the agent and attorney in fact for one Charles Musso, upon the ground of fraud. The five cases were tried together. The principles of equity applicable thereto are the same in each case.

Has the government, upon the facts stated, shown such a superior equitable right to that of the defendants to the lands in question as to entitle it to recover? From the stipulated facts it is apparent that the controlling question in each case is whether the defendants, being bona fide purchasers of, and having the legal title to, the lands herein involved, without knowledge of the fraud committed upon the government in obtaining the patent through which they derived their title, are entitled to a decree. This question, in the light of the adjudicated cases, is too well settled in favor of the defendants to require any extended discussion. The undisputed facts affirmatively show that a fraud was committed upon the United States, sufficient in equity, as against the parties perpetrating it, or those claiming under them with notice of it, to justify the cancellation of the patent. But it is manifest that the fraud that was committed was not such as prevented the passing of the legal title by the patent. This being true, it necessarily follows that, to a bill in equity to cancel the patent upon this ground, the defense of a bona fide purchaser, for value, without notice, is perfect. Boone v. Chiles, 10 Pet. 177, 209; Colorado Coal & Iron Co. v. U. S., 123 U. S. 307, 8 Sup. Ct. 131; U. S. v. California & O. Land Co., 1 C. C. A. 330, 49 Fed.

496; Id., 148 U. S. 31, 41, 13 Sup. Ct. 458; U. S. v. Dalles Military Road Co., 2 C. C. A. 419, 51 Fed. 629, 638; Id., 148 U. S. 49, 13 Sup. Ct. 465; U. S. v. Winona & St. P. R. Co., 15 C. C. A. 96, 67 Fed. 948, 960; U. S. v. Southern Pac. R. Co., 76 Fed. 134, 137.

The reason for protecting innocent purchasers holding the legal title is that a court of equity only acts upon the conscience of the party, and, if he has done nothing which taints it, no demand can attach upon it, so as to give jurisdiction in equity. Clear and strong as the equity of the United States in these cases must be admitted be, it is self-evident that it is no clearer or stronger than that of the innocent purchasers of the legal title to the lands, who paid a valuable consideration therefor, and have made many valuable improvements thereon in good faith, without any notice of the illegal acts committed by the person or persons who wrongfully and fraudulently obtained the patent from the United States. Justice and equity demand that they should have protection and relief. They committed no fraud. They have acted with a clear conscience, and are not guilty of any wrong. They relied, and had the right to rely, upon the patent issued by the government in a case where it had the unquestioned jurisdiction and right to issue the patent. The fact that the government was imposed upon is not their fault. They cannot be held responsible for the fraud of others, of which they had no notice. The United States has no equitable title to the lands which is superior to the rights of the defendants and bona fide purchasers thereof. A decree in each case will be entered in favor of the defendants.