## UNITED STATES *v.* DALLES MILITARY ROAD Co. *et al.*

### (*Circuit Court of Appeals, Ninth Circuit.* July 18, 1892.)

**1. EQUITY—PLEAS—REPLICATIONS—SUIT TO FORFEIT LAND GRANTS.**

Act Cong. Feb. 25, 1867, granted certain lands to the state of Oregon to aid in the construction of a military road, and authorized the sale of the lands on the certificate of the governor of the state that the road was completed. The state granted the lands to a road company, and thereafter the governor issued the required certificate, and the lands were sold. Subsequently, in pursuance of Act Cong. March 2, 1889, (25 St. at Large, 850,) a suit was brought to declare the forfeiture of the lands on the ground that the road was never built as required by the act of congress, and that the governor's certificate was procured by fraud. Defendants filed two pleas, supported by answer: (1) That the issuance of the certificate was without any fraud on the part of the road company; and (2) that defendants were *bona fide* purchasers without notice of the alleged fraud. The circuit court held these pleas sufficient in law, and dismissed the bill. On appeal to the supreme court, this decree was reversed, the court holding that the government was entitled to file replications to the pleas, and saying that "congress intended a full and legal investigation of the facts, and did not intend that the important interests involved should be determined upon the untested allegations of the defendants." Subsequently replications were filed to the pleas. *Held*, that the case was thereafter to be tried on the issues raised by the pleas, and, if defendants were found to be *bona fide* purchasers, the bill should be dismissed, irrespective of the questions of the building of the road, or of fraud in obtaining the governor's certificate.

**2. SAME—EVIDENCE—BONA FIDE PURCHASERS.**

Evidence that the governor's certificate of the completion of the road was procured by fraud was inadmissible, when such fraud was not shown to have been committed by the road company or its grantees, or any one acting in its or their behalf, or that either had any knowledge thereof.

**3. LAND GRANTS—FORFEITURE—EVIDENCE.**

The act of congress having determined that the lands might be sold on the governor's certificate of the completion of the road, and the subsequent act of 1874 (18 St. at Large, 80) having authorized the issuance of patents upon the same evidence, *bona fide* purchasers from the road company had a right to rely on such certificate, and, in the absence of any fraud or notice of fraud, evidence that the road was never in fact constructed as required by the act was immaterial.

**4. SAME—MILITARY ROAD—CERTIFICATE OF COMPLETION.**

The act of 1867 provides that such lands may be sold in quantities not exceeding 30 sections, "when the governor of said state shall certify to the secretary of the interior that 10 continuous miles of said road are completed, and so on, from time to time, until said road shall be completed." *Held*, that the fact that the governor's certificate was not given until the whole road was completed did not affect its validity.

**5. SAME.**

The certificate of the governor that he had "made a careful examination of the said road since its completion, and that the same is built in all respects as required by the above-recited acts," was a sufficient certificate that the road had been "constructed and completed."

**6. SAME—BONA FIDE PURCHASERS—NOTICE.**

The fact that the governor's certificate of the completion of the road was dated only about eight months after the date of the state act granting the lands to the road company was not sufficient to put a purchaser from the road company on inquiry, since there was nothing to show that the work may not have been commenced before the date of such grant.

**7. SAME—DEED—BONA FIDE PURCHASERS.**

In a suit by the United States to forfeit certain lands granted in aid of a military road, defendants claimed to be *bona fide* purchasers under a deed which declared that the road company "does hereby alien, release, grant, bargain, sell, and convey" to the grantee, "his heirs and assigns, the undivided one half of all the right, title, and interest" of the grantor "in and to all the lands lying and being in the state of Oregon, granted or intended to be granted to the state of Oregon by the act of congress approved July 2, 1864, * * * and granted by the state of Oregon" to the grantor by Act Or. Oct. 24, 1864, "and the undivided one half of the right, title, and interest" of the grantor "to said grant of land under the several acts aforesaid, whether listed and approved or otherwise, also the undivided one half of all future right, title, and interest, claim, property, and demand," which the grantor "may

at any time hereafter acquire to any lands by virtue of any further compliance with the requirements of said acts of congress, together with the hereditaments and appurtenances; * * * to have and to hold the lands hereby granted unto" the grantee, "his heirs and assigns, forever." *Held*, that this deed shows an intent to grant the lands themselves, and not merely any interest which the grantor may have therein, and hence that it is not a mere quitclaim, such as deprives the grantee of the right to rely upon the plea of an innocent purchase for value. *U. S. v. California & Oregon Land Co.*, 49 Fed. Rep. 496, followed.

Appeal from the Circuit Court of the United States for the District of Oregon. Affirmed.

*F. P. Mays,* U. S. Atty., and *A. H. Tanner,* for appellant.

*James K. Kelly* and *A. L. Frazer,* for appellees.

Before GILBERT, Circuit Judge, and HAWLEY and MORROW, District Judges.

HAWLEY, District Judge. This is a bill in equity instituted by the United States, in pursuance of the act of congress of March 2, 1889, (25 U. S. St. 850,) to procure a decree of forfeiture of all lands granted by congress to the state of Oregon to aid in the construction of a military wagon road from Dalles city, on the Columbia river, to Ft. Boise, on the Snake river, (14 U. S. St. p. 409,) on the ground that the terms and conditions of the grant have not been complied with, and that the certificate of the governor of Oregon, upon which patents were issued for a portion of said lands, was procured through fraud. The act granting said lands, among other things, provided:

"That said road shall be constructed with such width, gradation, and bridges as to permit of its regular use as a wagon road, and in such other special manner as the state of Oregon may prescribe." Section 3.

"That lands hereby granted to said state shall be disposed of only in the following manner, that is to say: When the governor of said state shall certify to the secretary of the interior that ten continuous miles of said road are completed, then a quantity of the land hereby granted, not to exceed thirty sections, may be sold, and so on, from time to time, until said road shall be completed; and, if said road is not completed within five years, no further sales shall be made, and the lands remaining unsold shall revert to the United States." Section 5.

The legislature of the state of Oregon, on October 20, 1868, passed an act granting the said lands to the Dalles Military Road Company, for the same purpose, and upon the conditions and limitations prescribed in the act of congress. St. Or. 1868, 3.

On June 23, 1869, the governor of Oregon gave the following certificate:

"I, George L. Woods, governor of the state of Oregon, do hereby certify that this plat or map of the Dalles military road has been duly filed in my office by the Dalles Military Road Company, and shows, in connection with the public surveys, as far as said public surveys are completed, the location of the line of route as actually surveyed, and upon which their road is constructed, in accordance with the requirements of an act of congress approved February 25, 1867, entitled 'An act granting lands to the state of Oregon, to aid in the construction of a military wagon road from Dalles city, on the Columbia river, to Ft. Boise, on the Snake river,' and with the act of the legislative

assembly of the state of Oregon approved October 20, 1868, entitled ' An act donating certain lands to Dalles Military Road Company.' I further certify that I have made a careful examination of said road since its completion, and that the same is built in all respects as required by the said above-recited acts, and that said road is accepted. * * * GEO. L. WOODS."

On May 31, 1876, the Dalles Military Road Company sold and conveyed the lands granted by said acts of congress and the state of Oregon to Edward Martin for the sum of $125,000. The deed conveying this land was a bargain and sale deed. By divers deeds of like character, by and through various other parties, the lands were thereafter conveyed to the defendant the Eastern Oregon Land Company.

In October, 1889, the circuit court, in considering the exceptions of defendants to certain portions of the bill, properly held (1) that the acts of congress and of the state of Oregon constituted the entire statutory contract with the Dalles Military Road Company, and that the statute of Oregon approved October 14, 1862, relative to the construction of roads by private corporations, having been passed without any reference to this specific grant, did not in any manner affect the question as to whether or not the road had been constructed in the manner and within the time prescribed by the act of congress; (2) that there not being anything in either of the acts granting this land requiring the road company, or any person claiming under it, to maintain the road after it had been completed and accepted by the government in accordance with the provisions of said acts, without any fraud, or notice of any fraud, to vitiate the acceptance, the rights of the Dalles Military Road Company, and those claiming under it, vested irrevocably upon such acceptance against the United States. *U. S.* v. *Dalles Military Road Co.*, 40 Fed. Rep. 114.

The defendants Henarie, Martin, and the Eastern Oregon Land Company, by leave of the court, filed two pleas to the bill, supported by an answer: (1) That the issuance of the certificate of the completion of the road by the governor was without any false or fraudulent representation on the part of the Dalles Military Road Company, or any one in its interest or behalf; (2) that the defendants purchased the lands in question in good faith, for a valuable consideration, without notice of any fraud. These pleas were set down for argument as to their sufficiency. The court held that both pleas were sufficient in law, and dismissed the bill, without giving the United States, as complainant, any opportunity to reply. *U. S.* v. *Dalles Military Road Co.*, 41 Fed. Rep. 493. An appeal was thereupon taken to the supreme court of the United States, and the court, after giving a detailed statement of the facts and discussing certain features of the case, said that "the decree must be reversed in so far as it dismisses the bill, and the case be remanded to the circuit court, with a direction to allow the plaintiff to reply to, and join issue on, the pleas." *U. S.* v. *Dalles Military Road Co.*, 140 U. S. 599, 11 Sup. Ct. Rep. 988.

When the case came back a decree was regularly entered as directed by the supreme court, and, in due time, replications to said pleas were

filed. Thereafter, by leave of the court, both pleas were amended by setting out more specifically the facts upon which said pleas were based. The first alleges, among other things, that the governor of Oregon, "without any false or fraudulent representations having at any time been made to him by the officers, stockholders, or agents of the Dalles Military Road Company; or any other person or persons in its or their interest, and without any one or more of them having falsely or fraudulently induced him to certify that the road of said company was constructed in accordance with law, on the 23d day of June, 1869, issued in favor of said company" the certificate heretofore quoted in full. It further alleges the sale of the road to Edward Martin for a valuable consideration, and from Edward Martin and others to the Eastern Oregon Land Company. The second plea sets out the issuance of the certificate by the governor; the withdrawal from sale of the lands by the commissioner of the general land office on the 18th of September, 1869; the act of congress approved June 18, 1874, "authorizing the issuance of patents for lands granted to the state of Oregon in certain cases," (18 St. U. S. p. 80;) alleges:

"That Edward Martin, then a resident of San Francisco, in the state of California, placing confidence in the truth of the certificate of the governor of the state of Oregon * * * that the said road had been duly constructed according to the requirements of the said act of congress; * * * and also placing confidence in the order of the commissioner of the general land office, * * * withdrawing the said lands from sale in favor of the Dalles Military Road Company; and also believing that the said act of congress approved June 18, 1874, would be carried into effect by issuance of patents to Dalles Military Road Company for all of said lands,—did, on the 31st day of May, 1876, purchase in good faith, for a valuable consideration, * * * all the lands embraced in the grant to said company, except such portions thereof as had been previously sold by it; that previous to the time of paying the sum of $125,000 purchase money, and receiving said deed, the said Edward Martin had no notice of any failure on part of the Dalles Military Road Company to construct and complete the said road, in accordance with the requirements of said act of congress approved February 25, 1867, and he had no reason to believe that the same was not constructed in accordance with the said act of congress, but, on the contrary, he was informed and believed that said road had been constructed with such width, gradation, and bridges as to permit of its regular use as a wagon road; that thereupon the said Edward Martin became and was the *bona fide* purchaser, for a valuable consideration, of all said lands then owned by the Dalles Military Road Company, which were then conveyed to him by said corporation."

The plea then alleges the sale of certain interests in said lands, and the various mesne conveyances made at different times without notice of any fraud, and that the Eastern Oregon Land Company now holds the legal title to all the said lands granted by the act of congress, except such as have heretofore been sold to other parties.

When the case, upon these pleas, was called before the examiner, the United States introduced a witness, by whom they offered to prove that the road had not been constructed or completed as required by law. The defendants objected to this character of testimony, upon the ground

that, the burden of proof to establish the truth of the pleas being on the defendants, they should first be allowed to introduce their testimony, and upon the further ground that testimony as to the construction or nonconstruction of the road was not pertinent to the issues raised by the pleas and replication. The objection, having been certified to the court, was sustained. After the testimony for the defendants was completed, the United States again offered to prove that the road had never been constructed, and that the certificate of the governor, certifying to its completion, was procured by fraud and false representations. Defendants thereupon objected to any testimony being given as to the nonconstruction of the road, on the ground that it was immaterial, and not pertinent to any issues raised by the pleas, and objected to any testimony offered as to fraud and false representations being used to procure the governor's certificate, for these reasons, unless it was first shown, or was intended to be shown, that the fraud or false representations were made or used by the defendant the Dalles Military Road Company, its officers, stockholders, or agents, or by some one for it or in its behalf. These objections were likewise sustained by the court.

The Dalles Military Road Company and James K. Kelly, its president, and C. N. Thornbury, its secretary, on October 25, 1889, filed their separate answer to each and every paragraph of the bill, and therein alleged that the road was constructed, in all respects, as required by law, without any fraud, and gave at great length the particular manner and time of its construction and completion. They affirmatively allege, among many other things, that in March, 1869, the Dalles Military Road Company "had a continuous road from Dalles city, on the Columbia river, to Ft. Boise, on the Snake river, over which teams of eight or ten horses or mules or five yoke of oxen could and did pass over the entire length of said road, * * * hauling as much as five tons of freight at a load; that it was constructed with such width, gradation, and bridges as to permit of its regular use as a wagon road;" that the governor of Oregon at the time of the execution of his certificate well knew from an examination made by him, "and by good and sufficient proof from reliable persons examined by him, that the said road was constructed in all respects as required by the act of congress," and was fairly accepted by him; that the road was so constructed as to permit the transportation of property, troops, and mails of the United States over the same, and * * * was so used when said road was accepted by the governor." No replication was ever filed to this answer, and on November 27, 1891, the court, upon motion of defendants' counsel, dismissed the bill as to said defendants, under the provisions of equity rules 61 and 66, for failure of complainant to file a replication. Thereafter complainant moved the court to set aside said order of dismissal, on the ground, among others, that the reply filed to the pleas of the other defendants was a sufficient replication to said answer, and, if not, that leave be granted to file a replication *nunc pro tunc,* which motion was denied. On December 7, 1891, the pleas of the defendants the Eastern Oregon Land Company, Henarie, and Martin came up for hearing, and the court held that the

pleas were sustained by the evidence, and dismissed the bill as to said defendants. From the orders of the court dismissing the bill, complainant appeals to this court.

This case in nearly all of its essential features presents precisely the same questions that were decided by this court in U. S. v. California & Oregon Land Co., 49 Fed. Rep. 496, and upon the authority of that case the judgment of the circuit court should be affirmed. But inasmuch as the questions involved are claimed to be of vital importance to many persons in Oregon who have settled in that portion of the state where the lands granted are located, and at whose instance the authority of congress was obtained to institute this suit, as well as of great interest to the parties to the suit, we have deemed it proper to more fully state the facts, and to again review, more in detail, some of the various legal propositions that have been so ably and thoroughly discussed by the respective counsel in both cases. There is really but one question involved in this case, viz., are the pleas sustained by the evidence? It is, however, contended that the act of congress authorizing this suit to be brought required a full and complete investigation of all the facts presented by the bill, and that the decision of the supreme court in this case recognized that right when it reversed the decision of the circuit court.

It is true that the act of congress authorized the suit to be brought—

"To determine the questions of the reasonable and proper completion of said roads in accordance with the terms of the granting acts, either in whole or in part, the legal effect of the several certificates of the governors of the state of Oregon of the completion of said roads, and the right of resumption of such granted lands by the United States, and to obtain judgments, which the court is hereby authorized to render, declaring forfeited to the United States all such lands  *  *  * which were not constructed in accordance with requirements of the granting acts, and setting aside patents which have issued for any such lands, saving and preserving the rights of all *bona fide* purchasers of either of said grants, or of any portion of said grants, for a valuable consideration, if any such there be."   25 St. U. S. p. 851.

The object of this act was to have a hearing in the courts· upon all the legal issues that might be presented by the pleadings. As was said by the supreme court:

"It is manifest that, although the act says that suits are to be tried and adjudicated in like manner and by the same principles and rules of jurisprudence as other suits in equity, congress intended a full and legal investigation of the facts, and did not intend that the important interests involved should be determined upon the untested allegations of the defendants."  U. S. v. *Dalles Military Road Co.*, 140 U. S. 631, 11 Sup. Ct. Rep. 988.

The issues raised by the pleas should be tried. The United States was entitled to file a replication thereto; was entitled to have all the facts having any legitimate bearing upon the truth or falsity of the pleas determined by the courts; and the court erred in dismissing the bill without allowing the United States to have such a hearing. The decision of the supreme court is unquestionably correct, and it has been

strictly followed by the circuit court in this case. The merits of the pleas have been investigated. The decision of the supreme court recognized the sufficiency and validity of the pleas. This is manifest from the language of the opinion:

"We are of opinion that the circuit court erred in not permitting the plaintiffs to reply to the pleas, and in dismissing the bill absolutely. It is provided by rule 33 of the rules of practice in equity that the plaintiff may set down a plea to be argued, or may take issue upon it. This does not mean that the plaintiff is to make thereby such a conclusive election that, if he sets down the plea to be argued, and it is sustained on the argument, he cannot afterwards take issue on it. By rule 34, on the overruling of a plea on hearing, the defendant has a right to answer the bill. The object of having a plea set down for hearing is to induce the presentation to the court, as a question of law, of the matters set up in the plea, so that, assuming these matters to be true in point of fact, the whole controversy may, perhaps, be determined as a question of law. * * * Various matters of fact are alleged in the pleas, which the plaintiffs have a right to controvert, such as that there were no fraudulent representations made to the governor; that he made the certificate without any fraud on his part; that Martin was a *bona fide* purchaser for a valuable consideration, without notice; that Henarie was likewise; and that the subsequent grantees were such *bona fide* purchasers." 140 U. S. 616, 617, 11 Sup. Ct. Rep. 988.

The cases were sent back to be tried upon the issues raised by the pleas. If the plea of being *bona fide* purchasers was found good, then the bill should be dismissed. If, under the facts, it was found to be untrue, then the parties would still have the opportunity to try the case upon the other allegations of the bill and answer, and have it determined whether or not the road was in fact built as required by law. This is in accordance with the plain provisions of the act of congress, and of the language used by the supreme court with reference thereto. Are the pleas sustained by the evidence? Before reviewing the evidence, several preliminary questions, discussed by counsel, will be disposed of.

Is the certificate of the governor defective? Does it comply with the provisions of the act of congress? Did the court err in excluding the evidence offered by the United States to show that the certificate was obtained by fraud? Are the subsequent purchasers charged with any notice by any of the conditions in the various acts of congress or of the state of Oregon? Are the deeds conveying the land to the subsequent purchasers of such a character as to allow them to rely upon their plea of being *bona fide* purchasers for value? The act of congress does not prescribe any particular form in which the governor's certificate shall be issued:

"When the governor of the state shall certify * * * that any ten continuous miles of the said road are completed, then another quantity of land hereby granted, not exceeding thirty sections, may be sold, and so on, from time to time, until the said road is completed."

The fact that the governor's certificate was not given upon the completion of each section of 10 miles does not affect its validity. The corporation defendant might have required the governor to examine and

certify to the completion of each 10 miles of the road as it progressed, so as to enable it to get certain lands, from the sale of which they might obtain sufficient means to build other sections of the road, but it certainly lost no rights by waiting until the road was fully completed for the entire distance. It would be manifestly unjust to hold that the parties completing the road with their own means could not be entitled to the benefits of the grant, because the act stated that the lands should only be disposed of as provided in the act upon the completion of each 10 miles, and that the granted lands "shall be exclusively applied to the construction of said road, and to no other purpose, and shall be disposed of only as the work progresses." If an owner of a town lot should make a contract with a contractor to construct a building upon said lot, and agree to make payments every 30 days as the work progressed, said payments to be made upon the certificate of a supervising architect that a certain amount of materials had been used or labor performed, and that the amount of the payments should only be used for the purpose of paying for the materials and for the labor, and that after such contract was entered into the contractor bought and paid for all the materials, and paid for the labor, and made no demand for payment until the building was fully completed according to the contract, would the courts entertain a defense of the owner of the lot that nothing was due, because the payments were only to be made as provided for in the contract, and the certificate of the architect only set forth the fact that the building had been completed as required by the contract? Certainly not. A bare statement of the facts is a sufficient answer to the argument of counsel. It is absolutely devoid of merit. It is claimed that the language of the certificate of the governor, that he has "made a careful examination of the said road since its completion, and that the same is built in all respects as required by the above-recited acts, and that said road is accepted," is not in compliance of the act of congress of June 18, 1874, in that it does not certify that the road has been "constructed and completed."

The certificate of the governor in this respect is not defective. It would be a play upon words, a reliance upon form instead of substance as to the meaning of words, to hold that the use of the word "built," as used in the certificate, is not equivalent to the word "constructed," as used in the act of congress, and, in this connection, it is difficult to see how it can with any degree of consistency be claimed that the certificate of the governor does not show that the road had been completed. How could he have certified that he examined the road "since its completion," and that the same was built in all respects as required by law, unless it was constructed and completed as required by the act of congress?

The certificate substantially conforms to all the requirements of the acts of congress. Another alleged suspicious circumstance is mentioned and relied upon by counsel. The statute of Oregon granting this land was approved October 20, 1868, and the certificate of the governor was made July 23, 1869. This short period of time is said to be such a striking thing that

it could not have "escaped the attention of the purchasers if, as they claim, they relied upon it when they made the purchase." Our attention has not been called to any provision in any of the acts prohibiting any work being done by anybody upon the road until after the grant is made to some person or corporation by the state of Oregon. The certificate of the governor does not state that the road was built in eight months,—the time intervening after the lands were granted by the state before the certificate was given. For aught that appears in the acts of congress, the act of Oregon, or the certificate of the governor, the road might have been fully constructed and completed before the last-mentioned act was passed, and, if this were true, it would not affect the validity of the grants, or of the certificate of the governor. Whatever the facts may be, it is enough to say that the purchasers were not put upon any notice to ascertain at what particular time, or within what particular time, the road was built. The governor's certificate being valid and sufficient upon its face, did the court err in excluding the evidence offered to show that it was obtained by misrepresentation and fraud? No objection was made to any evidence which the United States might offer to show that any fraud was committed by the Dalles Military Road Company, its officers, stockholders, or agents, or by any person in its or their behalf. No offer was made to make any such proof. It was not proposed by the United States to in any manner connect the Dalles Military Road Company, or any of the other defendants, with any fraud or misrepresentation, or to show that it, or they, or either of them, had any knowledge or notice of any fraud in this respect. What was the use of taking up the time of the court, or its officers, in taking testimony that was wholly and manifestly irrelevant to any issue in the case? The defendants could not be held responsible for any fraud or misrepresentation committed by others, if any was committed by anybody, unless it was proposed to show that they had knowledge thereof, or were in some manner legally bound thereby. The objection to the evidence as offered was properly sustained.

The court did not err in excluding the testimony offered by the United States to show that the road had never been built as required by the act of congress. The answer to the argument of counsel is found in the act of congress granting the lands. This act declared what should be considered conclusive evidence as to the building and completion of the road. The purchasers had the right to rely upon such evidence, and to act upon it, if there was no fraud, or no notice of any fraud, upon their part. What further facts were legally necessary for them to inquire into? The act itself declared, designated, and determined the kind, character, and nature of the proof that would be sufficient to establish the fact of the construction and completion of the road.

In 1874, five years after the certificate of the governor was given, congress passed an act which, after reciting the facts that certain lands had been theretofore granted by congress to the state of Oregon to aid in the construction of certain military roads in said state, and that there existed no law for the issuing of formal patents for said lands, provided:

"That in all cases when the roads, in aid of the construction of which said lands were granted, are shown by the certificate of the governor of the state of Oregon, as in said acts provided, to have been constructed and completed, patents for said lands shall issue in due form to the state of Oregon as fast as the same shall, under said grants, be selected and certified, unless the state of Oregon shall by public act have transferred its interests in said lands to any corporation or corporations, in which case the patents shall issue from the general land office to such corporation or corporations." 18 St. U. S. p. 80.

All that was required by this act was the fact that the governor of Oregon had issued a certificate that the road had been constructed and completed as in said acts provided. The wisdom of such a provision is not the subject of discussion. Congress created the witness, and declared that his testimony, in the shape of a certificate, would be sufficient evidence that the road had been built. When this proof was presented it furnished all the testimony which reasonable, prudent, and careful business men, acting in good faith, without any knowledge or notice of any fraud, were required to examine. Congress authorized patents to issue upon such proofs, and the officers of the government of the United States, prior to the sale of the lands to the defendants in the pleas, had issued patents upon such proofs to a portion of the lands specified in the grants. In the light of all these facts, the purchasers certainly had the right to rely upon the good faith of the government of the United States, and to act upon the certificate, and repose confidence in the truth of the facts therein stated, and were not required to go behind such proofs, and personally inspect and examine the road to see whether or not said certificate was false before purchasing the lands. There is no evidence in this case tending, in the slightest degree, to show that the purchasers had designedly abstained from making any inquiry as to the construction and completion of the road, for the purpose of avoiding any information or knowledge. The authorities cited by appellants, touching the responsibility of parties under such circumstances, have no application whatever to the facts of this case.

It is argued here, as it was in *U. S.* v. *California & Oregon Land Co.*, *supra*, that the deed from the Dalles Military Road Company to Martin was a quitclaim deed, and for that reason the defendants were put upon inquiry as to the title, and are not entitled to maintain their pleas of being *bona fide* purchasers for value. The facts do not support the argument of counsel. The deed, as we have already said, was a bargain and sale deed, reciting that:

"The company, in consideration of the sum of $125,000, to it in hand paid, has granted, bargained, and sold, released and conveyed, and by these presents it does grant, bargain, sell, release, and convey, unto the said party of the second part, his heirs and assigns, all the lands lying and being in the state of Oregon, granted or intended to be granted to said state by act of congress approved February 25, A. D. 1867, * * * and the right to a patent or patents for said lands granted to said party of the first part by act of congress approved June 18, 1874, * * * which said lands were granted * * * by the state of Oregon to the said Dalles Military Road Company, * * * which said several acts are hereby made part hereof, and all the right, title, and interest acquired, or to be acquired, by the party of the first part, under

the said several acts hereinbefore referred to, or either of them; * * * it being the intention of the party of the first part to convey, and it does hereby convey, to the party of the second part, the said lands; * * * to have and to hold the lands hereby granted, and every part and parcel thereof, unto the said party of the second part, his heirs and assigns, forever."

There is nothing in the form or language of this deed to imply, in the slightest degree, that the conveyance was only of the speculative right, title, and interest of the corporation. The other deeds to the other defendants are of the same character. It is, in this connection, claimed that, because Martin first procured the shares of stock of the corporation before the deed was executed, no consideration was paid for the deed, and that for this reason the defendants are not *bona fide* purchasers. The truth is, as shown by the testimony, that Martin, acting under the advice of counsel, procured the legal title to the stock of the corporation, as well as a deed direct from the corporation, for the purpose of preventing any question as to the validity of the title to the lands. There is nothing in the deed, nor in the manner in which it was obtained, nor in any of the facts relating to the purchase, which legally deprives the defendants, or either of them, from asserting or maintaining their rights under the plea of being *bona fide* purchasers for value.

The testimony clearly shows that full value was paid for the lands; that before the purchase was made an abstract of title was prepared by competent persons, and the opinions of able attorneys as to the validity of the title procured; that every precaution, as ordinarily exercised by cautious, careful, and prudent men, was observed, in order to ascertain whether the title was valid; that neither Martin, nor either of the other purchasers, had any knowledge, notice, or suggestion, of any kind, character, or nature whatever, that the road had not been constructed or completed as required by the acts of congress, or of the act of the state of Oregon, or that there was any fraud in obtaining the governor's certificate that it was so constructed and completed; that no notice was given or claim made to them, or either of them, or to any person, to their knowledge, that the United States, or any person or corporation except the Dalles Military Road Company and its grantees, had any claim or ownership to the lands, or any part thereof. Every living witness who was in any way or manner connected with the sale or purchase of the property, or was in a position to have known the facts, was examined by the defendants. No offer was made to contradict their testimony. C. N. Thornbury, who was secretary of the Dalles Military Road Company at the time the deed was made to Martin, and an old resident of The Dalles, testified that there had not been at the time of the sale any public talk or claim of fraud in the matter of the governor's certificate of the construction of the road, to his knowledge, and that he would have been likely to have heard of it if there had been any such talk; that he had not at that time, or at any time prior thereto, ever heard that any one questioned the validity of the title of the Dalles Military Road Company, or that there was any suspicion of fraud in procuring the governor's certificate, or in any of the transactions of the company. The testimony

of William Grant, who was secretary of the company prior to Thornbury, and had lived in the state of Oregon for over 30 years, and at Grant, Or., within 10 miles of the land grant, for 14 years, is to the same effect. P. J. Martin, who acted as the agent of his brother Edward Martin and Mr. Phelan in making the purchase, testified fully in regard to all the transactions with the corporation and its stockholders. The following questions and answers illustrate the general character of his testimony:

"*Question.* Mr. Martin, prior to the time and at the time of your purchase of these lands for your brother and Mr. Phelan, as you have narrated, had you heard any claim or assertion that there was fraud in the construction of the Dalles military road, or in procuring the governor's certificate that the same had been constructed, or in procuring the president of the United States to patent part of these lands, or the secretary of the interior to list the same, or had you any information that would lead you to believe or suspect that there had been fraud in any of these acts? *Answer.* None whatever. I never heard anything against the title, or anything different at the time, and I certainly must have heard of it if there was any such report abroad; I never heard anything going about, or anything against the title. * * * *Q.* At the time you acquired this interest, did you have any knowledge or information that would lead you to believe there was fraud in the construction of this road, or in procuring the governor's certificate? *A.* Why, certainly not, or I would not have paid my coin for it. * * * *Q.* Now, you may state if, at any time this property was transferred to the Eastern Oregon Land Company, any of the incorporators of that company, or the stockholders therein, to your knowledge, had any information of any fraud in the construction of this road, or in the procuring of the governor's certificate of completion of the road, or in procuring the listing of the lands by the secretary of the interior, or the issuing of patents on the part of the same by the president of the United States, or any fraud whatever connected with the business. *A.* None whatever, that I ever heard of, near or remote."

Edward Martin is dead. James Phelan's testimony, and that of every other living witness who had anything to do with the transaction, is to the same effect. It therefore affirmatively appears that the defense of *bona fide* purchasers was established by competent and sufficient evidence, under the general rules of equity practice, and the saving clause in the act of congress, authorizing the commencement and trial of this and other causes.

It is apparent that it would have been an idle, useless, and expensive waste of time and means to have gone into the inquiry as to whether each and every mile of the 330 miles of road, or of any part of it, had ever been constructed or completed. That fact was wholly immaterial to the truth or falsity of the pleas. The question as asked and the offers as made by counsel for the United States were wholly irrelevant to any issue raised by the pleas. The court did not err in sustaining the objections of defendants thereto. In view of these conclusions, it is immaterial whether the court erred in refusing to allow the complainant to reply to the answer of the Dalles Military Road Company, or in dismissing the bill as to it. The judgment of the circuit court is affirmed.