UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court, S. D. California. July 27, 1896.)

No. 195.

1. PUBLIC LANDS--RAILROAD GRANT.
   The existence of a claim by the state for lands, to make good alleged losses of portions of a thirty-sixth section granted for school purposes, is sufficient, without regard to its validity, to take such lands out of the category of "public lands," within the meaning of a railroad grant attaching alone to such lands.

2. SAME—INDEMNITY SCHOOL LANDS.
   Act Cong. March 1, 1877, entitled "An act relating to indemnity school selections in the state of California," confirms only such of the state selections as were certified by the United States to the state.

3. SAME—ISSUE OF PATENT—EFFECT.
   Where jurisdiction over the subject-matter is committed to the officers of the land department, and they are charged with the duty of determining whether the particular land was or was not covered by a grant to a railroad company, such a decision culminating in the issuance of a patent passes title to the property, and a bona fide purchaser under such a patent prior to any attempt to annul it will be protected.

4. SAME—BONA FIDE PURCHASER.
   One who purchased, for a valuable consideration, from a railroad company, land included in its grant, and received a deed therefor, without notice that the United States claimed the land, but believing that the title was vested in said company, and at the same time entered into possession and remained therein, is a "bona fide purchaser" from the company, who is, under Acts March 3, 1887, and March 2, 1896, protected, as against a vacation or annulment of the patent issued for such land to the railroad company.

5. SAME—RIGHTS OF MORTGAGEES.
   One claiming under a mortgage of lands granted by congress to a railroad company, made subsequent to Act March 3, 1887, providing for suits to vacate patents erroneously issued by the officers of the land department under grants to a railroad company, is not protected under the act as a bona fide purchaser, the act expressly declaring that a mortgage by the company shall not be considered as a sale for that purpose.

The United States Attorney General, George J. Denis, U. S. Atty., and Joseph II. Call, Sp. Asst. U. S. Atty., for the United States.

Joseph D. Redding, A. B. Hotchkiss, W. F. Herrin, and Wm. Singer, Jr., for defendants Southern Pac. R. Co. et al.

Page, Eells & Wheeler, for defendant Central Trust Co. of New York.

Chapman & Hendrick and Graves, O'Melveny & Shankland, for defendant C. M. Wright.

ROSS, Circuit Judge. The United States having issued its patent to the defendant railroad company for the E. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$, the E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$, and the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 21, township 2 S., range 9 W. of the San Bernardino base and meridian, and for the S. $\frac{1}{2}$ of section 11, township 3 S., range 9 W., of the same base and meridian, as a part of the lands granted to that company by the act of congress of March 3, 1871 (16 Stat. 573), this suit was instituted, pursuant to the provisions of the railroad adjustment act, approved March 3, 1887 (24 Stat. 556), to vacate and annul the patent so issued. Among the defendants to the bill as amended is C. M. Wright, who alleges title in himself to those portions of section 21 above described, not only by virtue of a deed from the Southern Pacific Railroad Company, but through a conveyance from the state of California, to which he alleges the said portions of section 21 were granted and listed by the United States as a part of its school-land grant. The evidence shows that all of the lands involved in this suit lie within the primary limits of the grant to the defendant railroad company of March 3, 1871; but it also shows that at the time of the making of that grant, and at the time of the definite location of the road the defendant company was thereby authorized to construct, all of the lands here in controversy had been applied for by the state of California to make good alleged losses of portions of a certain thirty-sixth section embraced in the grant to the state for school purposes by the act of congress approved March 3, 1853 (10 Stat. 244), which losses the state alleged were sustained by reason of said portions of the thirty-sixth section being included within the limits of a Mexican grant. Those selections by the state were filed and placed on record, to be forwarded to the general land office for approval, by the officers of the local land office of the district in which the lands are situated. The evidence does not show that the selections by the state ever met the approval of the commissioner of the general land office, or the secretary of the interior. Many years afterwards, to wit, on October 20, 1880, they were held by the commissioner of the general land office for cancellation, for the reason that the portions of section 36, township 2 N., range 4 W. of the San Bernardino base and meridian, the alleged loss of which was the basis for the selections in question, were not in fact lost to the state; and upon that ground the claim of the state to the lands in controversy was canceled by the general land office February 5, 1881. Nevertheless, at the time of the definite location

of the defendant company's railroad authorized to be built by the act of March 3, 1871, as well as at the date of that grant, the claim of the state of California to the lands in controversy stood upon the records of the local land office uncanceled, and recognized by its officers. The presumption—indeed, the conclusive presumption —is that the claim to the lands by the state was made in good faith. Whether or not valid is immaterial to the question here; for, as has been often decided by the supreme court, it is not the validity of such a claim, but the fact that it existed at the time of the definite location of the railroad, that excluded the lands in controversy from the category of "public lands," to which alone the company's grant attached. Whitney v. Taylor, 158 U. S. 85–94, 15 Sup. Ct. 796–799; De Lacey v. Railroad Co., 19 C. C. A. 157, 72 Fed. 726, and cases there cited. This view is conclusive as against the contention of the defendant railroad company.

The defendant Wright asserts title to those portions of section 21 above described by virtue of a conveyance from the state of California, alleging that those portions of section 21 were granted and listed by the United States to the state of California as a part of its school-land grant. The evidence shows that the lands in question never were listed by the United States to the state of California. It is true that the bill, as amended, itself alleges—

"That said selections were made by the state of California in the form and manner as provided by law, and were filed in the office of the commissioner of the general land office, and duplicate originals thereof were filed in the United States land office in the proper district, and the said selections and claims to said land were duly entered upon the tract books and other records of the general land office at Washington, and in the records of the United States land office for the district in which said lands were situated, and so remained as a valid and existing claim to said lands, and to the whole thereof, from the date of said selection until the 5th day of February, 1881, at which time said selections were canceled by the commissioner of the general land office, acting on behalf of the secretary of the interior."

There is here, however, no allegation that the lands claimed by the state were ever certified to the state by the United States, and there is a stipulation in evidence to the effect that they never were. The remedial act passed by congress March 1, 1877 (19 Stat. 267), entitled "An act relating to indemnity school selections in the state of California," and commonly known as the "Booth Act," confirms only such of the state selections as were certified by the United States to the state. The lands in controversy, not having been so certified, were not embraced by that act. The fourth section of the act under which the present suit was brought, however, provides, among other things, that where such lands as those here involved have been erroneously patented, and have been sold by the grantee company to a citizen of the United States, the person so purchasing in good faith, his heirs or assigns—

"Shall be entitled to the land so purchased upon making proof of the fact of such purchase at the proper land office within such time and under such rules as may be prescribed by the secretary of the interior, after the grants respectively shall have been adjusted; and patents of the United States shall issue therefor and shall relate back to the date of the original certification or patenting, and the secretary of the interior, on behalf of the United States,

shall demand payment from the company which has so disposed of such lands of an amount equal to the government price of similar lands; and, in case of neglect or refusal of such company to make payment as hereafter specified within ninety days after the demand shall have been made, the attorney general shall cause suit or suits to be brought against such company for the said amount; provided, that nothing in this act shall prevent any purchaser of lands erroneously withdrawn, certified, or patented as aforesaid from recovering the purchase money therefor from the grantee company, less the amount paid to the United States by such company as by this act required," etc. 24 Stat. 557.

It is suggested on the part of the complainant that the defendant Wright cannot be regarded as a purchaser in good faith, because he took with notice of the grant to the railroad company, and subject to all of its terms and provisions. It is undoubtedly true that he did take with notice of that grant, and subject to all of its terms and conditions. He must be held to have known, for example, that the officers of the land department charged with the duty of executing the provisions of that grant were not empowered to issue thereunder any evidence of title to any land that, at the time of the taking effect of the grant, had been otherwise disposed of by the government, or the disposition of which had been committed to others than the officers of that department. In all such cases, in which there is a total lack of jurisdiction over the subject-matter, any pretended conveyance thereof by the officers of the land department, even if in the form of a patent, would be absolutely void. But where, as in the case at bar, jurisdiction over the subject-matter was committed to the officers of the land department, and they were charged with the duty of determining the question whether the particular land was or was not covered by the grant to the railroad company, such a decision, culminating in the issuance of a patent, passes title to the property, and is subject only to annulment on a direct attack, and for sufficient reasons. U. S. v. Winona & St. P. R. Co., 15 C. C. A. 96, 67 Fed. 948, and cases there cited. Under well-settled principles of equity, a bona fide purchaser under such a patent prior to any attempt to annul it would be protected. U. S. v. Winona & St. P. R. Co., supra; U. S. v. California & O. Land Co., 148 U. S. 40–45, 13 Sup. Ct. 458. Moreover, the act itself, in relation to the adjustment of land grants made by congress to aid in the construction of railroads, and for the forfeiture of unearned lands, under which the present suit was instituted, declares, in effect, in its fourth section, that those citizens of the United States, or persons who have declared their intention to become such citizens, who have purchased from a grantee company in the honest belief that they were thereby acquiring title, are purchasers in good faith, within the meaning of the act; for the provision is that as to all such lands as are here involved, "which have been sold by the grantee company to citizens of the United States, or to persons who have declared their intention to become such citizens, the person or persons so purchasing in good faith, his heirs or assigns, shall be entitled to the lands so purchased," etc. In the legislation in question, congress, being aware of the fact that public lands had been erroneously certified and patented to various railroad and

other companies, provided for the bringing of appropriate suits to annul such certificates and patents, at the same time affording protection to such citizens of the United States, and persons who have declared their intention to become such, their heirs and assigns, as have purchased from such grantee companies in good faith; that is to say, in the honest belief that by such purchase they were obtaining title. By a still later act, to wit, the act approved March 2, 1896, and entitled "An act to provide for the extension of the time within which suits may be brought to vacate and annul land patents, and for other purposes," and relating to the same matter, in part, as is embraced by the adjustment act of March 3, 1887, congress still further protected purchasers from such grantee companies; for by the first section of that act it is, in express terms, declared that "no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed." 29 Stat. 43. This provision, it will be observed, unlike the adjustment act of March 3, 1887, is not limited to citizens of the United States, or persons who have declared their intention to become such, but applies to all good-faith purchasers from such companies, whatever their nationality.

It was stipulated by the respective parties in the present case that:

"The defendant C. M. Wright during the year 1880 purchased from the defendant Southern Pacific Railroad Company the title of said company in and to the several tracts described in the answer of C. M. Wright to the third amended bill of complaint filed by the complainant herein, for a valuable consideration, which was paid to said Southern Pacific Railroad Company, and that thereafter a deed was executed by said company to said Wright, purporting to convey to said Wright the said tracts of land described in said answer of said Wright as aforesaid; that said defendant Wright, at the time of purchasing said land and receiving said deed, and at the time of paying the purchase price therefor, had no knowledge or notice that the United States owned said land, or had or claimed any interest therein other than that conveyed to him by the acts of congress of March 3, 1871, and July 27, 1866, making a grant to said Southern Pacific Railroad Company, and by other acts of congress, and by the records of the general land office at Washington, but, on the contrary, said Wright then believed that the title to said land was vested in said Southern Pacific Railroad Company, and that such conveyance was not made to said Wright to or for the use of said company; that, at the time said Wright purchased the said lands from said railroad company, he entered into the possession thereof, and fenced the same, and ever since has been, and now is, in the actual possession of said lands, and all thereof."

It seems clear to me that these facts make Wright a purchaser in good faith, within the meaning of the acts of congress upon the subject, and that the right and title to those portions of section 21 so purchased by him were confirmed to him by the act approved March 2, 1896, and that the patent therefor, as to him, cannot, under the express provision of that act, be vacated or annulled.

The act of March 2, 1896, further provides, in section 2—

"That if any person claiming to be a bona fide purchaser of any lands erroneously patented or certified, shall present his claim to the secretary of the interior prior to the institution of a suit to cancel a patent or certification, and, if it shall appear that he is a bona fide purchaser, the secretary shall request that suit be brought in such case against the patentee or the corpora-

tion, company, person or association of persons for whose benefit the certification was made, for the value of said land; which in no case shall be more than the minimum government price thereof, and the title of such claimant shall stand confirmed. An adverse decision by the secretary of the interior on the bona fides of such claimant, shall not be conclusive of his rights, and if such claimant or one claiming to be a bona fide purchaser who has not submitted his claim to the secretary of the interior, is made a party to such suit, and if found by the court to be a bona fide purchaser, the court shall decree a confirmation of the title and shall render a decree in behalf of the United States against the patentee corporation, company, person, or association of persons, for whose benefit the certification was made, for the value of the land as hereinbefore provided. * * *"

It is sufficient to say in respect to this latter provision that there is no evidence in the case as to the value of the lands in controversy, for which reason—apart from any other consideration—no judgment can be now given in favor of the United States against the defendant railroad company for such value.

The case shows that after the issuance of the patent to the defendant railroad company for the lands in controversy, and prior to the institution by the government of this suit to annul it, the railroad company executed to the defendant Central Trust Company of New York a mortgage, in terms, purporting to cover all of the lands granted to the railroad company by the acts of congress of March 3, 1871, and July 27, 1866, with certain exceptions not necessary to be mentioned, to secure the payment of certain bonds which were issued and sold to various purchasers for value prior to the commencement of this suit; and the claim is made that all such lien holders are as much protected by the principles of equity as are bona fide purchasers of such lands. At the time of the execution of the mortgage, however, covering the lands here in controversy. there was in existence the adjustment act of March 3, 1887, of which the mortgagees had notice, providing for suits to vacate patents erroneously issued by the officers of the land department under the grants made to the railroad company, in terms affording protection to purchasers in good faith of lands so erroneously patented, but expressly declaring "that a mortgage or pledge of said lands by the company shall not be considered as a sale" for that purpose. The mortgage here in question did not describe any particular tract or tracts of land, but embraced in general terms the lands granted by congress to the railroad company; and having been executed after the passage of the act of March 3. 1887, the holder took with notice of the fact that the United States claimed that, under the grant, lands had been erroneously patented to the railroad company, and with notice of the fact that by the act of March 3, 1887, congress had provided for the bringing of suits to annul all such patents as were erroneously issued; at the same time affording protection to bona fide purchasers under such patents, but expressly declaring that a mortgage or pledge of such lands by the railroad company shall not be considered as a sale for that purpose. Under such circumstances, the holder of the mortgage must be held to have taken with his eyes open, and cannot be regarded in the same light as a purchaser of title in good faith, and without notice.

It results from what has been said that there must be a decree for the complainant, annulling the patent in so far as concerns the S. ½ of section 11, township 3 S., range 9 W. of the San Bernardino base and meridian, and establishing its validity in favor of the defendant Wright in respect to those lands in controversy falling within section 21, township 2 S., range 9 W. of the same base and meridian. A decree to that effect will be entered, but without prejudice to the right of the United States to sue for the value of the land thus confirmed to Wright.