NORTHERN PAC. RY. CO. v. WISMER.

(Circuit Court of Appeals, Ninth Circuit.   February 7, 1916.)

No. 2642.

PUBLIC LANDS ⬾73—RAILROAD GRANT—LANDS OCCUPIED AS INDIAN RESERVATION.

> A tract of land which on October 4, 1880, when the Northern Pacific Railroad Company filed its map of definite location, was within a larger tract then actually occupied by a tribe of Indians under an agreement made with representatives of the Interior and War Departments, subsequently ratified, setting it apart as their reservation, which it continued to be until 1910, was not on such date public land "free from pre-emption or other claims," within the grant to the railroad company of July 2, 1864 (13 Stat. 365, c. 217), and did not pass thereunder.
>
> [Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 236, 237; Dec. Dig. ⬾73.]

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action at law by the Northern Pacific Railway Company against Emma A. Wismer, substituted for George F. Wismer, deceased. Judgment for defendant, and plaintiff brings error. Affirmed.

Charles W. Bunn, of St. Paul, Minn., Edward J. Cannon, of Spokane, Wash., and Charles Donnelly, of St. Paul, Minn., for plaintiff in error.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.   The sole question in this case is whether the tract of land in controversy, consisting of 80 acres, passed to the plaintiff in error under and by virtue of the act of Congress of July 2, 1864 (13 Stat. p. 365, c. 217).   It is in effect conceded that it did, if on the date the railway company definitely fixed the line of its railroad and filed a plat thereof in the office of the Commissioner of the General Land Office, to wit, October 4, 1880, the United States had full title thereto, and the same was not reserved, sold, granted, or otherwise appropriated, and was free from pre-emption or other claims or rights.

The case is ejectment, and was submitted in the court below upon an agreed statement of facts, from which statement we quote as follows:

"Prior to August 16, 1877, bands of Indians roved about and upon said lands and used the said country for hunting and fishing, and so occupied the same, as they did a considerable scope of country, including the unoccupied and unsurveyed territory now comprising Eastern Washington; that said Indians had not ceded any right or interest in and to any part thereof, if any they had, to the government of the United States.

"That in June, 1877, certain Indian bands and tribes of the northwest country had commenced hostilities against, and were engaged in killing, wounding and outraging, white settlers and destroying their property, and that during said time and for five or six years thereafter, said Indians continued to men-

---

ace the white population living in Eastern Washington, Oregon, and Northern Idaho, and the military forces of the United States government and said hostile Indians were engaged in actual warfare.

"That the said Indians so engaged in war with the United States during said time sought to induce other Indians at peace with the government to engage in hostilities with them.

"That among the peaceful Indians, which those at war were endeavoring to have join them, were many residing on the lands afterwards set aside as the Spokane Indian reservation, which reservation includes the lands in the complaint.

"That upon August 16, 17, and 18, 1877, a council was held at Spokane Falls, Wash., between the Spokane Tribe of Indians, Colonel E. C. Watkins, who was then and there an Indian inspector, representing the Department of the Interior, acting in his official capacity, and General Frank Wheaton, and Captain M. C. Wilkinson, of the United States Army, representing the War Department.

"That for the purpose of collecting the said Indians belonging to the said tribe on a reservation, there to engage in agricultural pursuits and establish permanent homes, and to extinguish the general Indian title of any of the said Indians to all other lands not within the said reservation, and as a means of influencing said Indians to continue in friendly relations with the whites, to remain at peace with the government of the United States, and abide by all laws of the same, and obey the orders of the Indian Bureau and the officers acting thereunder, the agreement, as set forth in Exhibit A attached to the defendant's answer, was made, which is as follows:

" 'In Council at Spokane Falls, W. T.

" 'August 18, 1877.

" 'We, the undersigned chiefs and head men of the Spokane Tribe of Indians, for ourselves and our people, hereby agree to accept the following described land for our reservation: Beginning at the source of the Chimokan creek in Washington Territory; thence down said creek to the Spokane river; thence down said river to the Columbia river; thence up the Columbia river to the mouth of Nimchin creek; thence easterly to the place of beginning.

" 'And we do further agree to go upon the same by the 1st of November next, with the view of establishing our permanent homes thereon and engaging in agricultural pursuits. We hereby renew our friendly relations with the whites and promise to remain at peace with the government and abide by all laws of the same, and obey the orders of the Indian Bureau and the officers acting thereunder.

| " 'Names of Witnesses. | Names. |
|---|---|
| " 'E. C. Watkins, | |
| " 'U. S. Indian Inspector. | Whistle-poo-sum his X mark Spokane. |
| " 'Frank Wheaton, | |
| " 'Bt. Major Gen. U. S. Army, | |
| " 'Col. 2nd Infantry. | Quis-e-me-ow his X mark Spokane. |
| " 'M. C. Wilkinson, | |
| " 'Bvt. Capt. U. S. Army, | Ah-mi-melechin his X mark Spokane. |
| " 'Aide de Camp. | |
| | Cos-to-akan his X mark Spokane. |
| | Ora-pa-han his X mark Spokane. |
| | Paul his X mark Ora-pa-ham.' |

"That thereafter, and prior to November 14, 1877, and pursuant to the agreement aforesaid, the said E. C. Watkins, Indian inspector as aforesaid, acting in his official capacity, located such of the said Spokane Indians as were not already resident thereon upon said reservation above described, and said Spokane Indians remained upon and continued in use, occupancy, pos-

session, and enjoyment of said tract described in said agreement and claimed the same as their reservation continuously thereafter until the year 1910.

"That the action of the said E. C. Watkins in locating said Indians upon said reservation was by him reported to the Commissioner of Indian Affairs on November 14, 1877, and said report was, on January 23, 1878, in response to a resolution, communicated by the Secretary of the Interior to the United States Senate, and by the Senate referred to the committee on Indian affairs and ordered printed.

"That about August, 1880, said Indians were much disturbed by the attempts of squatters to locate on land within the limits of said territory so claimed by the said Indians as their reservation, and on the 3d day of September, 1880, for the purpose of carrying out the terms of the agreement entered into at said council, and preserving peace between the Indians and white settlers, Brigadier General Howard, of the Department of the Columbia, made an order, which is as set forth in Exhibit B attached to defendant's answer, which reads as follows:

" 'Headquarters Department of the Columbia.
" 'In Field, Spokane Falls, W. T.
" 'September 3, 1880.
" 'Special Field Orders, No. 8.

" 'Whereas, in consequence of a promise made in August, 1877, by E. C. Watkins, inspector of the Indian Department, to set apart, or have set apart, for the use of the Spokane Indians, the following described territory, to wit: Commencing at the mouth of the Cham-a-kane creek; thence north eight miles in direction of said creek; thence due west to the Columbia river; thence along the Columbia and Spokane rivers to the point of beginning—the Indians are still expecting the executive order in their case, and are much disturbed by the attempts of squatters to locate land within said limits, it is hereby directed that the above-described territory, being still unsurveyed, be protected against settlement by others than said Indians, until the survey shall be made, or until further instructions. This order is based upon plain necessity, to preserve the peace until the pledge of the government shall be fulfilled, or other arrangements accomplished.

" 'The commanding officers of Fts. Cœur d'Alene and Colville and Camp Chelan are charged with the proper execution of this order.

" 'By command of Brigadier-General Howard.          H. H. Pierce,
" '1st Lieutenant, 21st Infantry, Acting Aide-de-Camp.
" 'Official:
" 'H. H. Pierce, Acting Aide-de-Camp.' "

The agreed statement of facts further shows that the President, by executive order made January 18, 1881, set aside and reserved for the use and occupancy of the Spokane Indians the lands embraced in the foregoing agreement with them and in the order of Gen. Howard, which lands included the tract here in controversy.

As already said, the only question in the case is whether at the time the line of the Northern Pacific Railroad Company was definitely located and the map thereof filed in the office of the Commissioner of the General Land Office, to wit, on October 4, 1880, there was such an existing claim on the part of others to the land in controversy as took it out of the category of public lands, to which alone the grant to the railroad company applied. Speaking of that particular grant the Supreme Court said in the case of Northern Lumber Co. v. O'Brien, 204 U. S. 190, 196, 27 Sup. Ct. 249, 251 (51 L. Ed. 438):

"No lands passed that were not, at the date of the grant, public land; that is, lands 'open to sale or other disposition under general laws,' not lands 'to which any claims or rights of others have attached.' "

230 F.—38

In the preceding case of No. Pac. Railroad v. Musser-Sauntry Co., 168 U. S. 604, 608, 18 Sup. Ct. 205, 206 (42 L. Ed. 596) the same court, speaking of the same grant and of lands thereby claimed to have been granted to the railroad company, said:

"Can it be said that they were free from such right when the very purpose of the withdrawal was to make possible the exercise of the right? But the language is not simply 'free from rights,' but 'free from claims,' and surely the defendant railway company had an existing claim. No one can read this entire description without being impressed with the fact that Congress meant that only such lands should pass to the Northern Pacific as were public lands in the fullest sense of the term, and free from all reservations and appropriations and all rights or claims in behalf of any individual or corporation at the time of the definite location of its road. Northern Pacific Railroad v. Sanders, 166 U. S. 620 [17 Sup. Ct. 671, 41 L. Ed. 1139]. And such is the general rule in respect to railroad land grants."

It is useless to cite the numerous other decisions of the Supreme and other courts to the same effect. Nor is it at all material that the outstanding claim be valid; for the Supreme Court, as well as other courts, have frequently decided that it is not the validity of such claim, but the fact that it existed at the time of the definite location of the railroad, that excluded the lands in controversy from the category of "public lands" to which alone the company's grant attached. Decisions to that effect are also very numerous. See, among them, Newhall v. Sanger, 92 U. S. 761, 765, 23 L. Ed. 769; United States v. So. Pac. R. R., 146 U. S. 570, 606, 13 Sup. Ct. 152, 36 L. Ed. 1091; United States v. So. Pac. R. R. Co. (C. C.) 76 Fed. 134, and cases supra.

Now, looking at the agreed statement of facts in the present case, it is seen that long prior to the grant to the Northern Pacific Railway Company, and as early as 1877, the tract of land in controversy here was included within lands claimed by the Spokane Tribe of Indians, and that on August 16th, 17th, and 18th of the year last mentioned, a council was held at Spokane Falls, Wash., between that tribe of Indians, an Indian inspector, representing the Department of the Interior, and Gen. Wheaton and Capt. Wilkinson, of the United States Army, representing the War Department, with the view to establishing the Indians mentioned on a reservation, and to extinguish the general Indian title of any of the Indians of that tribe to any lands not within such reservation, and as a result of that council an agreement in writing was entered into on the 18th of August, 1877, between the chiefs and head men of the Spokane Tribe, for themselves and their people, and the above-mentioned representatives of the Interior and War Departments of the United States, by which a specifically described tract of land should be set aside as a reservation for the Indians referred to, and accepted by them in lieu of their claim to the larger tract referred to; that thereafter, and prior to November 14, 1877, and in pursuance of the aforesaid agreement, the Indian inspector mentioned, acting in his official capacity, located such of the said Spokane Indians as were not already thereon upon the said specifically described tract, which Indians continued in the possession, use, and enjoyment thereof and claimed the same as their reservation continuously until the year 1910; that the said action of the said Inspector

was reported to the Commissioner of Indian Affairs on November 14, 1877, which report was on January 23, 1878, in response to a resolution, communicated by the Secretary of the Interior to the United States Senate, and by the Senate referred to the committee on Indian affairs and ordered printed; that about August, 1880, the said Indians being much disturbed by the attempts of squatters to locate on lands within the limits of the specifically described tract upon which they had been so located by the Interior Department, for the purpose of carrying out the terms of the agreement entered into by the government officials with the Indians, and preserving peace between them and white settlers, Gen. Howard issued the order of September 3, 1880, above set out, and on January 18, 1881, the President, in further pursuance of the aforesaid agreement between the Indians and the government officials, by executive order set aside and reserved for the use and occupancy of the Spokane Indians the specific tract embraced in the agreement made between the government and the Indians, which specific tract included the piece of land here in controversy, and on May 29, 1908, Congress consummated the aforesaid agreement with the Indians by passing an act authorizing and directing the Secretary of the Interior to cause allotments to be made under the provisions of the allotment laws of the United States to all persons having tribal rights or holding tribal relations and who may rightfully belong on the Spokane Indian reservation and who had not theretofore received allotments, and making provision for the sale of the surplus lands, and various other provisions not important to be mentioned. 35 Stat. 458, c. 217.

So that we have here a case in which it is agreed that on October 4, 1880, the piece of land in controversy, as a part of the tract specifically described as and for a reservation of the Spokane Indians, was in their actual use, occupancy, possession, and enjoyment, and was claimed by them as their reservation, and had been so occupied and claimed continuously since as early as November 14, 1877, which possession was established by the Secretary of the Interior through a subordinate officer, and which claim by the Indians was thereafter continuously recognized, not only by the Interior Department, but subsequently ratified and confirmed by the action of the President as well as by that of Congress. It thus clearly appears that, at the time the line of the Northern Pacific Company was definitely located and the plat thereof filed in the office of the Commissioner of the General Land Office, the piece of land here in dispute was claimed, not only by the Indians, but was claimed by the Secretary of the Interior for them and in their behalf.

The judgment is affirmed.